**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| ROBERT BENDER,<br><br>    Plaintiff,<br><br>v.<br><br>OTTUMWA COMMUNITY SCHOOL DISTRICT, JERRY MILLER, DANA WARNECKE, LONNA KASTER, and CARLY WETTSTEIN,<br><br>    Defendants. | Case No.:  4:23-cv-203-SHL-HCA<br><br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND JURY DEMAND** |

COME NOW Defendants Ottumwa Community School District, Jerry Miller, Dana Warnecke, Lorna Kaster, and Carly Wettstein, and in answer to Plaintiff's Second Amended Petition, state:

### INTRODUCTION

1.      This is an action under and pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 1981, 42 U.S.C. 1983, and the Iowa Civil Rights Act, Iowa Code Chapter 216.

**ANSWER:  In answering paragraph 1 of Plaintiff's Second Amended Complaint, Defendants admit only Plaintiff has brought actions based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, and the Iowa Civil Rights Act, Iowa Code Chapter 216.  Defendants deny they violated any of these statutes.**

2.      Under Title VII, 42 U.S.C. 1981, the Equal Protection Clause of the United States Constitution, and the Iowa Civil Rights Act, Plaintiff is protected from discriminatory practices based on his race and his skin color as well as against retaliation for opposing

discriminatory conduct.

**ANSWER:  The allegations of paragraph 2 set forth allegations of law that do not require a response.  To the extent that a response would be deemed required, Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 2 without the benefits of further discovery and therefor deny the same and demand strict proof thereof.**

## PROCEDURAL REQUIREMENTS

3.         Plaintiff Bender filed his first race and skin color discrimination complaint with the Iowa Civil Rights Commission on April 4, 2022, within the 300.-day limitations period from the last discriminatory act alleged. This Complaint was cross-filed with the Equal Employment Opportunity Commission.

**ANSWER: In answering paragraph 3 of Plaintiff's Second Amended Complaint, Defendants admit only that Plaintiff filed a race and skin color discrimination complaint with the Iowa Civil Rights Commission on April 4, 2022, and cross-filed it with the Equal Employment Opportunity Commission.  Further answering, Defendants state Plaintiff's Iowa Civil Rights Commission Complaint is a written document that speaks for itself.  Paragraph 3's assertion regarding Plaintiff's limitation period calls for a legal conclusion that does not require a response, and Defendants lack knowledge sufficient to form a belief as to the truth or falsity of these allegations without the benefits of further discovery and therefor deny the same and demand strict proof thereof.  Defendants reserve the right to assert the statute of limitations and failure to exhaust administrative remedies as affirmative defenses.**

4.      On March 21, 2023, less than ninety days prior to the initial filing of this Complaint, the Iowa Civil Rights Commission issued a Right to Sue Letter. On October 15, 2024, the EEOC/U.S. Department of Justice Civil Rights Division issued a Right to Sue Letter.

**ANSWER:  Defendants admit only that the Iowa Civil Rights Commission issued a right-to-sue letter on March 21, 2023, and the EEOC issued a right-to-sue letter on October 15, 2024.**

5.      On August 13, 2024, Plaintiff Bender filed his second race and skin color discrimination complaint with the Iowa Civil Rights Commission, setting forth further harassment, discrimination, and retaliation since he filed his first Complaint, within the 300-day limitations period from the last discriminatory act alleged. This Complaint was cross-filed with the Equal Employment Opportunity Commission.

**ANSWER: In answering paragraph 5 of Plaintiff's Second Amended Complaint, Defendants admit only that Plaintiff filed a race and skin color discrimination complaint with the Iowa Civil Rights Commission on August 13, 2024, and cross-filed it with the Equal Employment Opportunity Commission.  Further answering, Defendants state Plaintiff's Iowa Civil Rights Commission Complaint is a written document that speaks for itself.  Paragraph 5's assertion regarding Plaintiff's limitation period calls for a legal conclusion that does not require a response, and Defendants lack knowledge sufficient to form a belief as to the truth or falsity of these allegations without the benefits of further discovery and therefor deny the same and demand strict proof thereof.  Defendants reserve the right to assert the statute of limitations and failure to exhaust administrative remedies as affirmative defenses.**

6.      On October 18, 2024, less than ninety days prior to the filing of this Second Amended Complaint, the Iowa Civil Rights Commission issued a Right to Sue Letter on Plaintiff Bender's Second Complaint. On October 16, 2024, Plaintiff Bender requested a Right to Sue Letter from the EEOC for his Second Complaint. On December 5, 2024, Plaintiff Bender received a letter from the EEOC that his Right to Sue Request had been forwarded to the U.S. Department of Justice (DOJ). Plaintiff Bender is awaiting receipt of the Right to Sue Letter from the DOJ.

**ANSWER: Defendants admit only that the Iowa Civil Rights Commission issued a right-to-sue letter on October 18, 2024.  Defendants deny the remaining allegations of paragraph 6 for lack of knowledge sufficient to form a belief as to the truth or falsity of these allegations without the benefits of further discovery and therefor deny the same and demand strict proof thereof.  Defendants reserve the right to assert the failure to exhaust administrative remedies as an affirmative defense.**

<strong>JURISDICTION AND VENUE</strong>

7.      This Court has jurisdiction under 28 U.S.C. § 1331 as this is a civil action arising under federal law and pendent jurisdiction of the state claims under 28 U.S.C. § 1367.

**ANSWER:  Admitted.**

8.      Venue in the Southern District Court in Iowa is proper under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this claim occurred in Wapello County, Iowa.

**ANSWER:  Admitted that venue is proper.**

9.      The unlawful acts of which Plaintiff complains occurred in Wapello County, Iowa.

**ANSWER:  In answering paragraph 9 of Plaintiff's Second Amended Complaint,**

**Defendants admit only that Plaintiff has alleged certain acts occurred in Wapello**

**County, Iowa.  Defendants deny that Defendants engaged in any unlawful acts, whether**

**in Wapello County, Iowa, or elsewhere.**

## PARTIES

10.     Plaintiff Robert Bender is an African American male, and all times

material hereto, was a citizen and resident of Wapello County, Iowa.

**ANSWER:  Defendants admit Plaintiff is an African American male residing in Wapello**

**County, Iowa.  Defendants deny the remaining allegations of paragraph 10 for lack of**

**knowledge sufficient to form a belief as to the truth or falsity of these allegations without**

**the benefits of further discovery and therefor deny the same and demand strict proof**

**thereof.**

11.     At all times material hereto, Defendant Ottumwa Community School District

was a school district located in Wapello County, Iowa.

**ANSWER:  Admitted.**

12.     At all times material hereto, Defendant Miller was a citizen and resident of

Wapello County, Iowa, and was employed by Defendant Ottumwa Community School

District as a Principal. Defendant Miller held a supervisory position over Plaintiff.

**ANSWER:  Defendants admit Jerry Miller was a resident of Wapello County, Iowa, and**

**employed as the Principal at Evans Middle School in the Ottumwa Community School**

**District for the 2021-2022 school year.  Defendant Miller has since retired.**

13.     At all times material hereto, Defendant Warnecke was a citizen and resident

of Wapello County, Iowa, and was employed by Defendant Ottumwa Community School

District as an Assistant Principal. Defendant Warnecke held a supervisory position over

Plaintiff.

**ANSWER: Defendants admit Dana Warnecke was a resident of Wapello County, Iowa, and employed as an Assistant Principal at Evans Middle School in the Ottumwa Community School District for the 2021-2022 school year. Defendant Warnecke has since retired. Defendants deny that Warnecke supervised Plaintiff.**

14.    On information and belief at all times material hereto, Defendant Kaster was a citizen and resident of Wapello County, Iowa, and was employed by Defendant Ottumwa Community School District.

**ANSWER: Defendants admit Lonna Kaster was a resident of Wapello County, Iowa, and employed in the Ottumwa Community School District during the 2022-2024 school years.**

15.    On information and belief at all times material hereto, Defendant Wettstein was a citizen and resident of Wapello County, Iowa, and was employed by Defendant Ottumwa Community School District.

**ANSWER: Defendants admit Carly Wettstein was a resident of Wapello County, Iowa, and employed in the Ottumwa Community School District during the 2022-2024 school years.**

## FACTUAL BACKGROUND

16.    Plaintiff Robert Bender is African American. He is a member of a protected class based on his race. Plaintiff's skin color is black. He is a member of a protected class based on his skin color.

**ANSWER: Defendants admit only that Plaintiff is African American. Defendants deny the remaining allegations as legal conclusions that do not require a response.**

17.     Mr. Bender began working for Defendant Ottumwa Community School District on July 20, 2021, as Behavior Teacher and Junior Varsity High School Boys Basketball Coach.

**ANSWER:  Denied.  Defendants state Plaintiff was hired as a behavioral teacher at Evans Middle School for the Ottumwa Community School District on July 26, 2021.**

18.     Mr. Bender continues to work for Defendant Ottumwa Community School District and has also held the position of Junior High School Girls Track Coach.

**ANSWER:  Defendants admit only that Plaintiff continues to be employed by the Ottumwa Community School District.**

19.     Since he started working at Ottumwa Community School District, Mr. Bender has been the victim of racist abuse and harassment from students.

**ANSWER:  Denied.**

20.     Defendant Warnecke's job duties specifically included overseeing the conduct and discipline for students in the 6th grade. She had the direct authority to issue discipline to many of the students engaging in the race-based discrimination and harassment directed at Plaintiff.

**ANSWER:  Denied.  Defendants admit only that Defendant Warnecke was assigned to oversee 6th grade students at Evans Middle School during the 2021-2022 school year.**

21.     In early September 2021, Mr. Bender was first referred to by a student as a "nigger" and several of his colleagues witnessed it but did not challenge or stop the student's behavior.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 21 without the benefits of further**

**discovery, and therefor deny the same and demand strict proof thereof.**

22.     In late September 2021 into early October 2021, another student referred to Mr. Bender as a "nigger" several times and again this was witnessed by several of his colleagues.

**ANSWER: Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 22 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

23.     This incident was reported to Defendants Jerry Miller and Dana Warnecke.

**ANSWER: Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 23 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

24.     The student involved was eventually suspended for either a half or full day.

**ANSWER: Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 24 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

25.     From October 2021 to December 2021, Mr. Bender was referred to as a "nigger" on at least a weekly basis by different students in front of other staff, administration, and students.

**ANSWER: Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 25 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

26.     During this time, Mr. Bender also received sticky notes with racist messages on them. Mr. Bender again reported this conduct to Defendants Miller and Warnecke.

**ANSWER: Defendants lack knowledge sufficient to form a belief as to the truth or**

**falsity of the allegations contained in paragraph 26 without the benefits of further**

**discovery, and therefor deny the same and demand strict proof thereof.**

27.     In January 2022, Mr. Bender reported the racist conduct to the Executive

Director of Human Resources and Operations, David Harper.

**ANSWER:  Defendants admit only that Plaintiff discussed instances of student**

**misbehavior with David Harper in or about January 2022.  Defendants deny the**

**remaining allegations of paragraph 27.**

28.     Mr. Harper discussed the acts of racism with Defendant Miller, who later

assured Mr. Bender that racist conduct would not be tolerated.

**ANSWER:     Defendants admit only that David Harper discussed Plaintiff's complaint**

**of student misconduct with Jerry Miller, and that Jerry Miller later discussed the school**

**district's policies and procedures with Plaintiff.  Defendants deny the remaining**

**allegations of paragraph 28.**

29.     Unfortunately, the lack of discipline emboldened the students, and they

continued to refer to Mr. Bender as a "nigger" in front of staff and administration.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity**

**of the allegations contained in paragraph 29 without the benefits of further discovery,**

**and therefor deny the same and demand strict proof thereof.**

30.     One student in particular has repeatedly used the racist term in reference to Mr.

Bender.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity**

**of the allegations contained in paragraph 30 without the benefits of further discovery, and**

**therefor deny the same and demand strict proof thereof.**

31.     The student was eventually sent to "timeout" for his use of the term, but Mr. Bender was the adult in charge of supervising the student.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 31 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

32.     Throughout the duration of the timeout, the student continued to use the term directed toward Mr. Bender.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 32 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

33.     Another student started referring to Mr. Bender as a "nigger" and stated to Mr. Bender that he must be one since other students were referring to Mr. Bender using the term and were not being disciplined.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 33 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

34.     On March 9, 2022, Defendant Miller reassigned Mr. Bender from a Behavioral Teacher to an Inclusion Teacher for the next school year.

**ANSWER:  Defendants admit only that Jerry Miller informed Plaintiff that Plaintiff would be reassigned to an Inclusion Teacher for the next school year.  Defendants deny the remaining allegations of paragraph 34.**

35.      Mr. Bender was told by Defendant Miller that the reason he was being moved was because he had let a student walk out of his class.

**ANSWER:  Defendants admit that Plaintiff letting a student walk out of his class was one of the factors in the plan to reassign Plaintiff for the next school year.  Defendants deny this was the only reason for the plan to reassign Plaintiff, and further deny it was the only reason Miller gave Plaintiff for the plan to reassign.**

36.      On average there are about five to ten students who walk out of teachers' classrooms a day, and Plaintiff is unaware of any other teachers getting reassigned.

**ANSWER:  Denied.**

37.      On March 22, 2022, at the bus stop a student used the term "nigger" towards Mr. Bender in front of staff and parents. This was a 6th grade student, and a referral was written to Defendant Warnecke to discipline the student, but nothing was done about it. Defendant Warnecke also did not address the situation immediately after it happened nor in the subsequent months.

**ANSWER:  Denied.**

38.      On March 23, 2022, the student again used the term in front of Defendant Miller.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 38 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

39.      The student was not removed from class on March 23, 2022 and to Plaintiff's knowledge did not face any discipline or consequences.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or**

**falsity of the allegations contained in paragraph 39 without the benefits of further**

**discovery, and therefor deny the same and demand strict proof thereof.**

40.        Other students have been more severely disciplined for behavior not relating
to Mr. Bender.

**ANSWER:  Defendants admit only that students within the Ottumwa Community**

**School District have been disciplined for misconduct unrelated to Plaintiff.  Defendants**

**lack knowledge sufficient to form a belief as to the truth or falsity of the remaining**

**allegations contained in paragraph 40 without the benefits of further discovery, and**

**therefor deny the same and demand strict proof thereof.**

41.        A student was given a three-day suspension for slamming a door in the face
of Defendant Warnecke.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or**

**falsity of the allegations contained in paragraph 41 without the benefits of further**

**discovery, and therefor deny the same and demand strict proof thereof.**

42.        Around the same time as the incident with the door, Mr. Bender was hit
and called "nigger" by two different students, and they received no real punishment.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or**

**falsity of the allegations contained in paragraph 42 without the benefits of further**

**discovery, and therefor deny the same and demand strict proof thereof.**

43.        Another student referred to a teacher as a "fat man" and was suspended for three
days.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity**

**of the allegations contained in paragraph 43 without the benefits of further discovery, and**

**therefor deny the same and demand strict proof thereof.**

44.        On March 29, 2022, a student was suspended from Mr. Bender's class for cursing at Defendant Miller and other staff.

**ANSWER:  Defendants admit that on March 29, 2022, a student was given out-of-school suspension.  Defendants deny the remaining allegations of paragraph 44.**

45.        The student used the terms "nigger" and "pussy".

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 45 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

46.        The students who used this derogatory language were primarily in the 6th and 7th grades.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 46 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

47.        Despite several school employees reporting the racist and abusive conduct to Defendant Warnecke on several occasions, she deliberately refused to take real, meaningful corrective action to address it, stop the conduct, and discipline the offending students.

**ANSWER:  Denied.**

48.        When Defendant Miller informed Mr. Bender of the incident, he told Mr. Bender that although he takes no offense to the n-word that he understood why Mr. Bender would.

**ANSWER:  Defendants admit Mr. Miller spoke with Plaintiff regarding how students**

**would use profanity, insults, and abusive language in an effort to get a reaction from adults. Mr. Miller attempted to communicate with Plaintiff regarding use of the n-word, but was interrupted by Plaintiff. Plaintiff assured Mr. Miller that when students would make racial remarks or inappropriate comments it did not bother Plaintiff.**

49.    Mr. Bender was given the option to move to any available positions in the school district for the 2022-2023 school year.

**ANSWER:  Admitted.**

50.    Mr. Bender applied for and was accepted for a position as a special education teacher at the high school.

**ANSWER:  Admitted.**

51.    Out of ten special education teachers, Mr. Bender is the only African American teacher.

**ANSWER:  Defendants admit that Plaintiff is an African American. Defendants state the District has employed people of various races in various positions, including African American employees in the position of teacher. Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 51 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

52.    On Wednesday, May 17, 2023, Mr. Bender was contacted by HR and told that his progress monitoring for one student is not in compliance.

**ANSWER:  Admitted.**

53.    Compared to the other nine special education teachers, Mr. Bender's reporting is on par if not more detailed.

**ANSWER:  Denied.**

54.    In the spring of 2023, a teacher, Jodie Sirovy, stated that Defendant Wettstein

had asked her to find something wrong with Mr. Bender's monitoring of his students.

**ANSWER:  Denied.**

55.    Jodie Sirovy was further told to do this by Defendant Wettstein so that the school

could find a way to get rid of Mr. Bender, with the first complaint Mr. Bender had filed with

the ICRC and EEOC being the motivating factor.

**ANSWER:  Denied.**

56.    All of the Individual Education Plans (IEP) were sent back and forwarded to

Assistant Principal Jordan Buell, as it was falsely alleged that Mr. Bender had made mistakes

on his. This was despite the fact that Mr. Bender had had the head of his department, Zach

Forett, check them, and Forett had told Mr. Bender that his IEPs looked good.

**ANSWER:  Denied.**

57.    Mr. Bender even took a further step and compared his IEPs with the

Area Education Agency criteria to ensure he was doing them properly.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth**

**or falsity of the allegations contained in paragraph 57 without the benefits of**

**further discovery, and therefor deny the same and demand strict proof thereof.**

58.    Despite Mr. Bender's efforts, Defendant Wettstein told Mr. Bender that he

continued to make mistakes on his IEPs. The mistakes that Defendant Wettstein alleged Mr.

Bender made were similar or the same apparent errors as those made by other teachers on

their IEPs. Yet, Defendant Wettstein would not point out these errors to other teachers and

instead would compliment them on their IEPs.

**ANSWER:  Denied.  Defendants admit only that Plaintiff continued to make mistakes on his IEPs.**

59.     During one specific incident on December 15, 2023, Mr. Bender wrote an IEP in which he mistakenly left the names of other students on it which would be recognizable error. Due to the previous criticism Mr. Bender had received for other IEPs, he asked Zack Forett to proofread it before he submitted it.

**ANSWER:  Defendants admit only that Plaintiff made mistakes on his IEPs. Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 59 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

60.     Zack Forett read the IEP, confirmed there were no mistakes, and told Mr. Bender to submit it. After Mr. Bender submitted the IEP, Defendant Wettstein sent it to the principal to inform him that Mr. Bender had made a mistake.

**ANSWER:  Defendants admit only that Plaintiff made mistakes on his IEPs.  Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 60 without the benefits of further discovery, and therefor deny the same and demand strict proof thereof.**

61.     On separate occasions, two different students approached Mr. Bender and said the same thing to him about how he was suing the school and asked why he was still working there. Both students were on the Special Education roster of Defendant Kaster, a close friend of Defendant Wettstein.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 61 without the benefits of further**

**discovery, and therefor deny the same and demand strict proof thereof.**

62.    Defendant Kaster has continuously harassed Mr. Bender within the Special

Education Department, including criticizing his progress monitoring, accusing him of

inputting incorrect data, and talking about him in front of students. Other teachers, including

Zach Forett, Amber Sprouse, and Jodie Sirovy, have noted this behavior and commented that

Mr. Bender has been targeted.

**ANSWER:  Denied.**

63.    Mr. Bender reported the harassment to Zack Forett, Devin Baker, and Jordan

Buell. Jordan Buell told Mr. Bender that he was going to Mike Steisma, the Director of

Special Education about Mr. Bender's concerns.

**ANSWER:  Denied.**

64.    Due to the events detailed in this complaint, Mr. Bender has suffered

anxiety attacks and has been prescribed anxiety medication by his doctor.

**ANSWER:  Defendants lack knowledge sufficient to form a belief as to the truth or**

**falsity of the allegations contained in paragraph 64 without the benefits of further**

**discovery, and therefor deny the same and demand strict proof thereof.  Defendants**

**deny they engaged in any illegal acts or omissions against Plaintiff, and further**

**deny any act or omission of Defendants caused any of Plaintiff's claimed damages.**

### COUNT I – VIOLATION OF 42 U.S.C. SECTION 1981
### AGAINST ALL DEFENDANTS

65.    Plaintiff incorporates by reference as if fully set forth herein the

allegations contained in paragraphs 1– 64, above.

**ANSWER:  Defendants replead their responses to paragraphs 1–64 above as if**

**fully set forth herein.**

66.    Defendants subjected Plaintiff to unwelcome conduct by enabling students to harass and humiliate him through the use of racial slurs and racially charged language.

**ANSWER:  Denied.**

67.    This conduct was severe and pervasive. On a daily basis, Plaintiff was subjected to racist harassment from his students and was offered no relief from Defendants.

**ANSWER:  Denied.**

68.    Race was a motivating factor for Defendants' actions.

**ANSWER:  Denied.**

69.    Plaintiff complained about the race discrimination he experienced and otherwise opposed practices made unlawful by 42 U.S.C. section 1981.

**ANSWER:  The allegations of paragraph 69 set forth allegations of law that do not require a response.  To the extent that a response would be deemed required, Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 69 without the benefits of further discovery and therefor deny the same and demand strict proof thereof.**

70.    Defendants retaliated against him because of his race and because of his complaints opposing discrimination.

**ANSWER:  Denied.**

71.    As a result of Defendants' illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to mental and emotional distress, fear, anguish, anxiety, humiliation, intimidation, embarrassment, physical sickness, lost enjoyment of life, medical expenses, past and future lost wages, past and future lost benefits, future earnings, and other emoluments of employment.

**ANSWER:  Denied.**

72.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's federally protected rights.

**ANSWER:  Denied.**

**WHEREFORE**, Defendants request that the Court dismiss Plaintiff's claims against them with for such further relief as the Court deems just and equitable under the circumstances.

## COUNT II – VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION
## AGAINST ALL DEFENDANTS

73.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 64 above.

**ANSWER:  Defendants replead their responses to paragraphs 1–64 above as if fully set forth herein.**

74.    Defendants intentionally discriminated against Plaintiff because of his race, as set forth above.

**ANSWER:  Denied.**

75.    Defendants are state actors for purposes of 42 U.S.C. 1983, and their actions, outlined above, were taken under the color of state law.

**ANSWER:  The allegations of paragraph 75 set forth allegations of law that do not require a response.  To the extent that a response would be deemed required, Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 75 without the benefits of further discovery and therefor deny the same and demand strict proof thereof.  Defendants admit only that the Ottumwa Community School District is a state entity.**

76.        Defendants, through their agents, servants, and employees in their official capacities, established a policy, regulation, official decision, custom, or usage of reckless or deliberate indifference to the rights of Plaintiff.

**ANSWER:  Denied.**

77.        Defendants established, maintained, and enforced policies, regulations, official decisions, or usages which unconstitutionally deprived Plaintiff of his rights guaranteed by the Equal Protection Clause to the United States Constitution.

**ANSWER:  Denied.**

78.        Defendants deprived Plaintiff of the rights guaranteed to him under the Equal Protection Clause of the United States Constitution in violation of 42 U.S.C. § 1983.

**ANSWER:  Denied.**

79.        Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's federally protected rights.

**ANSWER:  Denied.**

**WHEREFORE**, Defendants request that the Court dismiss Plaintiff's claims against them with for such further relief as the Court deems just and equitable under the circumstances.

## COUNT III – RACE AND SKIN COLOR DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT OTTUMWA COMMUNITY SCHOOL DISTRICT

80.        Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1– 64, above.

**ANSWER:  Defendants replead their responses to paragraphs 1–64 above as if fully set forth herein.**

81.        Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended,

prohibits employers from discriminating against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

**ANSWER: The allegations of paragraph 81 set forth allegations of law that do not require a response. To the extent that a response would be deemed required, Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 81 without the benefits of further discovery and therefor deny the same and demand strict proof thereof.**

82.    Plaintiff experienced discrimination on the basis of his race and skin color.

**ANSWER: Denied.**

83.    Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

**ANSWER: The allegations of paragraph 83 set forth allegations of law that do not require a response. To the extent that a response would be deemed required, Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 83 without the benefits of further discovery and therefor deny the same and demand strict proof thereof.**

84.    Plaintiff complained about race discrimination he experienced and otherwise opposed practices made unlawful by Title VII of the 1964 Civil Rights Act.

**ANSWER: The allegations of paragraph 84 set forth allegations of law that do not require a response. To the extent that a response would be deemed required, Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 84 without the benefits of further discovery and**

**therefor deny the same and demand strict proof thereof.**

85.     Defendants, their agents, and/or employees retaliated against him because of his race and because of his complaints opposing discrimination.

**ANSWER:  Denied.**

86.     As a result of Defendants' illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to mental and emotional distress, fear, anguish, anxiety, humiliation, intimidation, embarrassment, physical sickness, lost enjoyment of life, medical expenses, past and future lost wages, past and future lost benefits, future earnings, and other emoluments of employment.

**ANSWER: Denied.**

87.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's federally protected rights.

**ANSWER:  Denied.**

   **WHEREFORE**, Defendants request that the Court dismiss Plaintiff's claims against them with for such further relief as the Court deems just and equitable under the circumstances.

### COUNT IV – HARASSMENT AND DISCRIMINATION ON THE BASIS OF RACE AND SKIN COLOR IN VIOLATION OF IOWA CODE CHAPTER 216.6 AGAINST ALL DEFENDANTS

88.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1– 64, above.

**ANSWER:  Defendants replead their responses to paragraphs 1–64 above as if fully set forth herein.**

89.     Plaintiff is an African American and his skin color is black and is a member of a protected class under the Iowa Civil Rights Act, Iowa Code Chapter 216.

**ANSWER: Defendants admit Plaintiff is an African American and his skin color is black. Defendants deny the remaining allegations of paragraph 89 for lack of knowledge sufficient to form a belief as to the truth or falsity of these allegations without the benefits of further discovery and therefor deny the same and demand strict proof thereof.**

90.     Defendants discriminated against and harassed Plaintiff with respect to the terms and conditions of his employment and permitted harassment and discrimination based on race and skin color against Plaintiff in violation of Iowa Code Chapter 216, as set forth above.

**ANSWER: Denied.**

91.     The conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive.

**ANSWER: Denied.**

92.     Defendants' conduct towards Plaintiff was unwelcome.

**ANSWER: Denied.**

93.     Defendant Ottumwa Community School District and its employees Jerry Miller and Dana Warnecke knew, or should have known, of the race discrimination undertaken by its students.

**ANSWER: Denied.**

94.     Defendants' violations of Iowa Code Chapter 216 were a cause of injuries and damages suffered by Plaintiff.

**ANSWER: Denied.**

95.     As a result of the Defendants' actions, Plaintiff has in the past and will in

the future incur costs for ongoing treatment of his anxiety, as well as emotional distress, anguish, and loss of enjoyment of life.

**ANSWER:  Denied.**

**WHEREFORE**, Defendants request that the Court dismiss Plaintiff's claims against them with for such further relief as the Court deems just and equitable under the circumstances.

### COUNT V: RETALIATION IN VIOLATION OF IOWA CODE SECTION 216.11 AGAINST ALL DEFENDANTS

96.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1– 64, above.

**ANSWER:  Defendants replead their responses to paragraphs 1–64 above as if fully set forth herein.**

97.     Plaintiff complained to Defendants about the discrimination and harassment he experienced on several occasions.

**ANSWER:  Denied.**

98.     After Plaintiff Bender complained about discrimination and harassment on the basis of his race and skin color, Defendants retaliated against Plaintiff by further discriminating against him, harassing him, and subjecting Plaintiff to a hostile work environment.

**ANSWER:  Denied.**

99.     Iowa Code Section 216.11 forbids harassment and retaliation against a person for filing a complaint regarding the discrimination he faces on the basis of his race and skin color.

**ANSWER:  The allegations of paragraph 99 set forth allegations of law that do not require a response.  To the extent that a response would be deemed required,**

**Defendants lack knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 99 without the benefits of further discovery and therefor deny the same and demand strict proof thereof.**

100.    Defendants' violation of Iowa Code Chapter 216 is a cause of the injuries suffered by Plaintiff.

**ANSWER:  Denied.**

101.    As a result of the Defendants' actions, Plaintiff has suffered, and will continue to suffer, past and future mental and emotional harm and anguish, anxiety, fear, loss of enjoyment of life, and other damages.

**ANSWER:  Denied.**

**WHEREFORE**, Defendants request that the Court dismiss Plaintiff's claims against them with for such further relief as the Court deems just and equitable under the circumstances.

## AFFIRMATIVE DEFENSES

Defendants set forth the following affirmative defenses.  By listing any matter as an affirmative defense, Defendants do not assume the burden of proving any matter upon which Plaintiff bears the burden of proof under applicable law.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's petition should be stricken because it fails to state a claim against these defendants.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff acknowledged and accepted the probability of exposure to behavioral misconduct.

### THIRD AFFIRMATIVE DEFENSE

All employment actions taken with respect to Plaintiff were taken for legitimate, non-discriminatory and non-retaliatory business reasons.

## FOURTH AFFIRMATIVE DEFENSE

Defendants took reasonable action(s) to address any discriminating, harassing, or retaliatory behavior.  Defendants took prompt and remedial action.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities available to him and/or provided by Defendants and failed to otherwise avoid the alleged harm.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were caused or contributed to by his own actions and/or inaction, over which Defendants had no control.

## SEVENTH AFFIRMATIVE DEFENSE

Defendants would have made the same decisions and taken the same action regardless of any unlawful motive ("mixed motive").

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff failed to exhaust administrative remedies.

## NINTH AFFIRMATIVE DEFENSE

To the extent Plaintiff inserts facts and/or claims in this litigation that were not raised or preserved with the Iowa Civil Rights Commission and/or the EEOC, Defendants assert they are barred for failure to preserve and comply with the administrative scheme, and would be untimely if asserted herein and/or barred for failure to exhibit administrative remedies.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, must be reduced or barred by his failure to reasonably

mitigate the same.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, must be reduced or barred by his actual earnings in the amounts he did receive or to the extent he failed to reasonably mitigate the same. Defendants claims any credits and/or offsets.

## TWELFTH AFFIRMATIVE DEFENSE

No action taken by Defendants with respect to Plaintiff was done with malice or any willful, wanton, or reckless disregard for Plaintiff's rights or with the intent of violating State or Federal law.

## THIRTEENTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims may be barred by the doctrines of laches, waiver, estoppel, judicial estoppel, or unclean hands.

## FOURTEENTH AFFIRMATIVE DEFENSE

The law, allegations, facts and circumstances of this case do not warrant or provide for the imposition of punitive damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

Any claim or award for punitive damages would be barred or limited by the U.S. Constitution and/or the Iowa Constitution.

The Defendants reserve the right to amend this pleading to assert additional defenses upon discovery of specific facts upon which Plaintiff bases his claims for relief and upon completion of further discovery.

## JURY DEMAND

COME NOW Defendants, by and through counsel, and hereby demand a trial by jury

in this matter.

/s/ Andrew T. Tice

/s/ Lindsay A. Vaught
Andrew T. Tice (AT0007968)
Lindsay A. Vaught (AT0010517)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: 515/243-7611
Facsimile: 515/243-2149
E-mail: atice@ahlerslaw.com
lvaught@ahlerslaw.com
**ATTORNEYS FOR DEFENDANTS**

**Electronically served:**
Roxanne Conlin
Devin Kelly
Roxanne Conlin & Associates, P.C.
3721 SW 61st Street, Suite C
Des Moines, IA 50321-2418
roxanne@roxanneconlinlaw.com
dkelly@roxanneconlinlaw.com
dpalmer@roxanneconlinlaw.com
**ATTORNEYS FOR PLAINTIFF**

4934-3868-0880-1\13473-045

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on:   April 1, 2025

By: ☐ U.S. Mail                    ☐ Fax

☐ Hand delivery              ☐ Private Carrier

☒ Electronically (e.g. CM/ECF)  ☐ E-mail

Signature:   /s/ Derek Smith