**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| ROBERT BENDER,<br>          Plaintiff,<br><br>v.<br><br>OTTUMWA COMMUNITY SCHOOL<br>DISTRICT, JERRY MILLER, DANA<br>WARNECKE, LONNA KASTER, and<br>CARLY WETTSTEIN.<br>          Defendants. | Case No.:  4:23-cv-203-SHL-HCA<br><br><br>**DEFENDANTS' REPLY BRIEF IN<br>SUPPORT OF MOTION FOR<br>SUMMARY JUDGMENT** |

COME NOW Defendants Ottumwa Community School District (the "District"), Jerry Miller ("Miller"), Dana Warnecke ("Warnecke"), Lonna Kaster ("Kaster"), and Carly Wettstein ("Wettstein")(collectively "Defendants"), pursuant to Fed. R. Civ. P. 56 and Local Rules 56 and 7, and submit the following Reply Brief in Support of Defendants' Motion for Summary Judgment.

### A. **PLAINTIFF'S RESISTANCE CONCEDES OR FAILS TO RESIST THE DISMISSAL OF MULTIPLE CLAIMS.**

Defendants' Motion for Summary Judgment seeks dismissal of all Plaintiff's claims. *See* ECF 101. Plaintiff's Resistance preserves only "his claims for a racially hostile work environment and punitive damages". *See* ECF 113. Plaintiff's concession requires <u>full</u> dismissal with prejudice of his other claims under Counts II (42 USC 1983 Claim), III (Race & Skin Color Discrimination and Retaliation under Title VII), and V (Retaliation under ICRA). Furthermore, Plaintiff's resistance addresses conduct only at Evans Middle School ("EMS") in 2021-2022 but does not resist dismissal of claims based on later conduct at Ottumwa High School ("OHS") as alleged in his prior amendment (*see* ECF 64, 68), which requires <u>full</u> dismissal with prejudice of claims based upon conduct at OHS including <u>all</u> claims against Defendants Kaster and Wettstein. The only remaining disputes for summary judgment are Plaintiff's hostile work environment claims against

the District, Miller, and Warnecke for conduct at EMS in 2021-2022 under Counts I (42 USC 1981) & IV (Hostile Work Environment under ICRA) and Plaintiff's request for punitive damages.

**B. <u>THIRD ELEMENT FOR HOSTILE WORK ENVIRONMENT ("BASED ON RACE").</u>**

Defendants argue Plaintiff cannot show his students' "harassment was based on his race" because "he cannot show the use of racial slurs by middle school children with behavior disorders was based upon Plaintiff's race" because these students "used the N-word as a trigger, not based upon a racial motivation" as "white employees were subjected to the same type of racially charged and profane conduct from these students". *See* ECF 107 at 23. Plaintiff's response discards consideration that the speakers were his middle school students with behavioral disorders or the existence of white comparator employees, arguing context is unimportant. *See* ECF 116 at 13, 15.

Contrary to Plaintiff's argument, courts have recognized that context matters. In *Ridley v. District of Columbia*, the court stated "[t]o label any and all use of the term 'nigger' among African Americans among themselves as creating a hostile environment is to ignore the reality of current African American culture, in which the term is often used without discriminatory content." 945 F.Supp. 333, 339 (D.C. 1996). The *Ridley* court recognized "the context in which the term is used by an African American with other African Americans determines whether such use creates a racially hostile work environment." *Id.* In *Barnhardt v. District of Columbia*, the court found use of the term "black nigger" by a police officer during an arrest "in the circumstances of this case during a struggle to effectuate an arrest, is not a sufficient basis from which a juror could conclude that the single insult standing alone is evidence of the officer's racial animus as a motivation for [the plaintiff's] arrest." 723 F.Supp.2d 197, 221 (D.C. 2010). More recently, in *Jones v. Das*, the Seventh Circuit found the plaintiff had failed to show race-based harassment stating "[p]erhaps if there were other instances of Das's conduct reflecting race-based hostility, Das's inexcusable

decision to utter the N-word could supply evidence of racial bias sufficient to preclude summary judgment". 164 F.4th 1024, 1035-36 (7th Cir. 2026). The *Das* court also acknowledged "a supervisor's use of racially toxic language in the workplace as much more serious than a co-worker's." *Id*. at 1036 (quoting *Gates v. Board of Education of Chicago*, 916 F.3d 631, 638 (7th Cir. 2019)). Clearly, context matters.

Here, Plaintiff has presented evidence of the indiscriminate use of profanity, including slurs, by 11-12 year old children with known behavioral disorders. There is evidence the children directed the N-word at Plaintiff (black) as well as Defendant Miller (white) and Argueta (white). *See* ECF 101-1, 113-1 at 23, 24. Plaintiff has put forth no evidence to show the children's conduct, including use of the N-word, differed based upon the race of persons in the room; only that these children would act out with people of all races. *See Alagna v. Smithville R-II School Dist.*, 324 F.3d 975, 980 (8th Cir. 2003) (referencing an "'equal opportunity' harasser defense" and precedent "requiring a Title VII plaintiff to prove that one sex was treated worse than the other"). Given the lack of such evidence, Plaintiff seeks a *per se* rule that use of the N-word by children with known behavioral disorders establishes a race-based motivation. No such rule exists in this Circuit[1] and the Court should reject Plaintiff's request for this Court to establish a *per se* rule that disregards context and presumes a particular motivation without supportive evidence.

## C. FOURTH ELEMENT FOR HOSTILE WORK ENVIRONMENT ("TERMS AND CONDITIONS OF EMPLOYMENT")

Defendants argue Plaintiff cannot show use of the N-word by middle school children with behavioral disorders altered the terms and conditions of his employment. *See* ECF 107 at 23-25.

---

[1] Plaintiff relies upon *Bailey v. Binyon*, 583 F.Supp. 923 (N.D. Ill. 1984), which itself relied upon *City of Minneapolis v. Richardson*, 239 N.W.2d 197 (Minn. 1976). Neither is binding upon this court and both are distinguishable as neither *Bailey* nor *Richardson* involved evidence of the indiscriminate use of the N-word with black and non-black people. Nor did either involve children with behavioral disorders.

Plaintiff's response relies upon cases involving differing circumstances with only tangential or off-point holdings.

First, Plaintiff highlights the Iowa Supreme Court's *Simon Seeding* case, arguing it held "racially animus language does not lose its offensiveness based on the context it is used in." *See* ECF 116 at 16-17. But Plaintiff makes too much of this case. The *Simon Seeding* case merely held a supervisor's use of "racially offensive remarks are not excused if they are made in a joking manner". 895 N.W.2d 446, 470 (Iowa 2017). The Court was not considering comments made by children with behavioral disorders, or more broadly "rejecting the view that racially animus language loses its offensiveness based on the context it is used in" as advocated by Plaintiff (*see* ECF 116 at 15). The *Simon Seeding* case did not instruct courts to disregard the context of offensive language or instruct courts to analyze comments from middle school children with behavioral disorders the same as supervisors or others. The *Simon Seeding* case merely rejected a "joke" defense that is not presented here.

Second, Plaintiff argues the Eighth Circuit's *BNSF Railway Company* decision "rejected a comparable argument when it came to sexual harassment" by refusing to excuse sexually-graphic graffiti displayed at a male-dominated workplace. *See* ECF 116 at 21-22. The *BNSF Railway Company* case rightfully refused to dismiss allegations of sexual harassment against females simply because it was a male-dominated workforce. 150 F.4th 948, 966 (8th Cir. 2025). Here, Plaintiff complains about the behavior of students with known behavioral disorders – an inherent part of the workplace – not racially or sexually-biased actions of co-workers. There is no comparison to the *BNSF Railway Company* case.

Third, Plaintiff cites to the *Berger-Rothberg* and *Plaza-Torres* decisions as recognizing student-on-teacher harassment. *See* ECF 116 at 19-20. In both cases, the courts recognized

student-on-teacher harassment claims had not been recognized by their respective circuits but allowed the claims to proceed to trial. *Berger-Rothberg*, 803 F.Supp.2d 155, 164 (E.D. New York 2011); *Plaza-Torres*, 376 F.Supp.2d 171, 182 (D. Puerto Rico 2005). Neither the *Berger-Rothberg* nor the *Plaza-Torres* case is binding upon this Court or particularly instructive in the absence of analysis particularly addressed to a behavioral disorders classroom.[2] Defendants have referenced Eighth Circuit and Iowa court guidance upon these subjects. *See* ECF 107 at 25-26.

In the case-at-bar, Plaintiff accepted a position with children having known behavioral disorders with the expectation they would use profane language, racial slurs, and physical aggression. *See* ECF 101-1, 113-1 at 7-9. These student behaviors were "part of the job itself". *Nexion*, 199 Fed.Appx. 351, 354 (5th Cir. 2006). In *Nexion*, the Fifth Circuit affirmed summary judgment in a hostile work environment claim arising out of a nursing home involving "frequent use of the word 'nigger' approximately three to four times a week". *Id*. at 352. In doing so, the Court held the plaintiff "worked in a place where more of the people around him were often unable to control what they said or did. It is objectively unreasonable for an employee in such a workplace to perceive a racially hostile work environment based solely on statements made by those who are mentally impaired." *Id*. at 352, 354. Indeed, in *Webster v. Chesterfield County School Board*, the Fourth Circuit affirmed summary judgment finding that "[w]ithout any expert testimony" to show the student's behavior was inconsistent with "a child his age and with his disabilities" the plaintiff failed to show objectively severe and pervasive conduct. 38 F.4th 404, 414-15 (4th Cir. 2022). Similarly, Plaintiff cannot establish a hostile work environment claim premised upon a known part of his job as a special education teacher in a behavioral disorders classroom.

---

[2] The *Berger-Rothberg* case involved a "Modified Instructional Services 2" class "comprised mostly of severely emotionally disturbed children." 803 F.Supp.2d at 158. The ruling describes "extremely disruptive, threatening, and often dangerous" actions by the plaintiff's students, but does not refer to the existence or consideration of a recognized "behavioral disorders" classroom or students having Individual Education Plans ("IEPs").

D.  **FIFTH ELEMENT FOR HOSTILE WORK ENVIRONMENT ("EMPLOYER IS LIABLE")**

Defendants submit Plaintiff cannot meet the prima facie requirement of showing "the employer is liable for the harassment" because Plaintiff cannot show Defendants' liability for student-on-teacher harassment in this particular work environment. *See* ECF 107 at 25-29.

The *Vajdl* case sets the standard for reviewing Defendants' potential liability for the actions of third-party children with behavioral disorders. 484 F.3d 546 (8th Cir. 2007). In *Vajdl*, the Court considered sexual harassment claims by a female youthcare worker at a facility providing "residential care along with educational and vocational training to male youths convicted of violent crimes". *Id*. The plaintiff claimed "she was subjected to unwelcome comments and harassing conduct on a daily basis by the [] youth" including calling the plaintiff "bitch" and stating they wanted to "attack" her. *Vajdl*, 2006 WL 1283894 *2 (D. Minn. 2006). In affirming summary judgment for the defendant, the Eighth Circuit held:

> **To impose liability upon the [defendant] for the inappropriate sexual expressions of severely troubled youth would not be reasonable without evidence of special circumstances. We, therefore, conclude that, in the absence of special circumstances not present here, the conduct of inmates cannot be attributed to an employer in order to show that the harassment affected a term, condition, or privilege of employment.**

*Vajdl*, 484 F.3d at 550-51. Plaintiff attempts to distinguish *Vajdl* arguing those youth were inmates rather than students. *See* ECF 116 at 28-29. But, more importantly, Plaintiff has admitted that both work environments (i.e., residential care facility and behavioral disorders classroom) include unwelcome comments from third party children. *See* ECF 101-1, 113-1 at 7-9. Under these circumstances, the *Vajdl* case applies equally to require a showing of "special circumstances" to attribute liability to Defendants for an anticipated part of the job.

6

Even if this Court were to set aside the *Vajdl* precedent, Plaintiff cannot establish liability here because Plaintiff cannot show a failure "to take appropriate remedial action." *Crist*, 122 F.3d 1107, 1110 (8th Cir. 1997); *Haskenhoff*, 897 N.W.2d 553, 571 (Iowa 2017). This is not a case where the employer took no action. Defendants have submitted evidence of multiple actions taken by the District to address Plaintiff's complaints. *See* ECF 107 at 27; *see also* ECF 101-1, 113-1 at 21, 25, 26, 37, 39-55. For his part, Plaintiff thinks "students did not receive *severe enough* consequences for using the N-word" because "students were not being suspended." *See* ECF 101-1, 113-1 at 35-37 (emphasis added). But Plaintiff admits he has never had to decide whether to suspend or expel a student. *See* ECF 115 at Pl. App. 0192 (Dep. 183:2-23). Nor does Plaintiff have an expert to support his claim that *more* suspensions were required for Defendants' response to be reasonable. *See* ECF 51. Plaintiff fails to put forth evidence sufficient for a jury to attribute liability to Defendants.

Notably, the Eighth Circuit has required expert testimony when "a claim lies outside the jury's common knowledge". *Sandhu v. Kanzler*, 932 F.3d 1107, 1116 (8th Cir. 2019). More specifically, in *Dordt*, the Iowa federal court recognized "expert testimony is typically required to explain complex issues specific to professional responsibilities or discretion" in addressing allegations of "negligence based on the handling of [a student's] disciplinary process by school employees". 616 F.Supp.3d 872, 918 (N.D. Iowa 2022). There, the Court believed the issue presented complexity and expert testimony was required as "the individual defendants needed to balance countervailing interests, such as campus safety and Doe's rights to due process". *Id*. Similarly, here, "[u]nlike in many Title VII actions where the employer's options to remedy a hostile work environment include firing an employee for sexual harassment, the [Defendants had] a more limited set of remedies available given that they must balance maintaining a nonhostile

work environment with ensuring that children have access to public education." *Webster*, 38 F.4[th] at 416.  Plaintiff argues application of these authorities would be "to incorporate evidentiary requirements from tort cases into this civil rights case."  *See* ECF 116 at 30.  But, the Eighth Circuit evaluates Title VII hostile work environment claims under a tort-sounding "negligence standard".  *Engel v. Rapid City School Dist.*, 506 F.3d 1118, 1123 (8th Cir. 2007); *see also Haskenhoff*, 897 N.W.2d at 575 (explaining the "direct negligence theory" for employer liability for harassment under the ICRA).  Expert evidence would be needed to explain to the fact-finder the countervailing interests, balancing of the educational environment and federally-protected student rights, and the limited remedies available to Defendants.  In the absence of supportive expert evidence, Plaintiff cannot establish liability.

### E.  PUNITIVE DAMAGES[3]

Defendants request the Court dismiss Plaintiff's requests for punitive damages against retired educators, Miller and Warnecke, because there is no evidence of "malice or reckless indifference" under this record.  *See* ECF 107 at 39.  Quite the opposite as the evidence shows many efforts made by Defendants to address Plaintiff's complaints against his students.  *See* ECF 107 at 27; *see also* ECF 101-1, 113-1 at 21, 25, 26, 37, 39-55.  Plaintiff's response fails to acknowledge, or even reference, the efforts made by Miller and Warnecke.  *See* ECF 116 at 34.

The cases relied upon by Plaintiff to seek punitive damages, *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612 (8th Cir. 2000), and *Williams v. ConAgra Poultry Co.*, 378 F.3d 790 (8th Cir. 2004), do not support his punitive damages claim.  In *Henderson*, the Court allowed punitive damages when the plaintiff "personally voiced over 40 complaints to her supervisors" and "[t]he

---

[3] Plaintiff's only remaining punitive damages claim is pursuant to 42 USC § 1981.  Punitive damages are not allowed in ICRA employment-discrimination claims.  *Ackelson v. Manly Toy Direct, L.L.C.*, 832 N.W.2d 678 (Iowa 2013).  Nor has Plaintiff sought punitive damages in his ICRA claim.  *See* ECF 79 at Count IV.

company acted upon [plaintiff's] complaints only once in two years" which itself was "half-hearted" while also "imped[ing] the plaintiff's attempts to gain relief". *Id*. at 619. In *Williams*, the Court similarly found complaints "extended over several years and resulted in no meaningful action on the part of management." 378 F.3d at 796.

Here, Miller and Warnecke had "a more limited set of remedies available" (see *Webster*, 38 F.4th at 416) and yet still undertook substantially more than the little to nothing done in *Henderson* or *Williams*. Plaintiff admits Miller and Warnecke never said or did anything stating an intention to discriminate against him. Pl. App. 0192 (Pl. Dep. 184:14-185:22). They just did not do enough, in his opinion, to respond to Plaintiff's complaints about his students. *Id*. Because there is no doubt Plaintiff cannot establish "malice" or "reckless indifference" under these circumstances, there is no reason to maintain Plaintiff's threat of punitive damages against these retired educators.

*/s/ Andrew T. Tice*

*/s/ Lindsay A. Vaught*
Andrew T. Tice (AT0007968)
Lindsay A. Vaught (AT0010517)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309-2231
Telephone: 515/243-7611
Facsimile: 515/243-2149
E-mail: atice@ahlerslaw.com
**ATTORNEYS FOR DEFENDANTS**

**Served upon:**

Roxanne Conlin
Devin Kelly
Roxanne Conlin & Associates, P.C.
3721 SW 61st Street, Suite C
Des Moines, IA 50321-2418
roxanne@roxanneconlinlaw.com
dkelly@roxanneconlinlaw.com
dpalmer@roxanneconlinlaw.com
**ATTORNEYS FOR PLAINTIFF**

4930-9766-3406-1\13473-045

| CERTIFICATE OF SERVICE |
|---|
| The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on:    May 20, 2026 |

By:
☐ U.S. Mail      ☐ Fax
☐ Hand delivery      ☐ Private Carrier
☒ Electronically (*e.g. CM/ECF*)      ☐ E-mail

Signature:    */s/ Derek Smith*