**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISON**

| | |
|---|---|
| ROBERT BENDER,<br><br>Plaintiff,<br><br>v.<br><br>OTTUMWA COMMUNITY SCHOOL DISTRICT, JERRY MILLER, AND DANA WARNECKE,<br><br>Defendants. | **CASE No.: 4:23-cv-203**<br><br>**PLAINTIFF'S TRIAL BRIEF** |

## TABLE OF CONTENTS


I. VOIR DIRE ........ 4

1) ***The U.S. Constitution, Court Rules, and Case Law Guarantee Impartial Trials by Jury*** ........ 4

2) ***Effective Voir Dire Prevents Bias and Prejudice from Tainting Trial*** ........ 8

3) ***Rehabilitation of Panel Members Should Be Limited and Used with Caution*** ........ 10

4) ***Preponderance of Evidence Standard*** ........ 17

5) ***Special Challenges Relating to Public Perception*** ........ 18

II. EVIDENTIARY ISSUES ........ 19

1) ***Leading Questions May Be Used to Refresh Recollection*** ........ 19

2) ***Leading Questions and Interrogating Adverse Witnesses*** ........ 20

3) ***Only the Questioner May Move to Strike Any Part of the Witness's Answer*** ........ 21

# TABLE OF AUTHORITIES


**Federal Constitutional Provisions**

U.S. Const. Amend. VII ........ 4
U.S. Const. amend. XIV, § 1 ........ 5

**Federal Statutes**

Fed. R. Civ. Pro. 47(a) ........ 4
Fed. R. Civ. Pro. 47(c) ........ 4, 6, 18
Fed. R. Evid. 611(c) ........ 19, 20, 21

**Federal Cases**

*Bailey v. Central Vt. Ry.*, 319 U.S. 350 (1943) ........ 4
*Cravens v. Smith*, 610 F.3d 1019 (8th Cir. 2010) ........ 4, 6, 18
*Crawford v. United States*, 212 U.S. 183 (1909) ........ 9
*Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) ........ 4
*Gonzales v. Thomas*, 99 F.3d 978 (10th Cir. 1996) ........ 9
*Jacob v. New York City*, 315 U.S. 752 (1942) ........ 4
*Moran v. Clarke*, 443 F.3d 646 (8th Cir. 2006) ........ 5
*Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017) ........ 5
*Ross v. Oklahoma*, 487 U.S. 81 (1988) ........ 4, 5
*Singer v. United States*, 380 U.S. 24 (1965) ........ 5
*Swain v. Alabama*, 380 U.S. 202 (1965) ........ 4
*Thomas v. Lumpkin*, 143 S. Ct. 4 (2022) ........ 8
*U.S. v. Burr*, 25 F. Cas. 49 (D. Vir. 1807) ........ 6
*U.S. v. Johnson*, F. Supp. 2d 721 (N.D. Iowa 2005) ........ 5
*U.S. v. Powell*, 226 F.3d 1181 (10th Cir. 2000) ........ 10
*United States v. Martinez-Salazar*, 528 U.S. 304 (2000) ........ 8
*Wainwright v. Witt*, 469 U.S. 412 (1985) ........ 4, 12

**Iowa Cases**

*State v. Beckwith*, 46 N.W.2d 20 (Iowa 2011) ........ 13
*State v. Cuevas*, 288 N.W.2d 525 (Iowa 1980) ........ 12
*State v. Neuendorf*, 509 N.W.2d 743 (Iowa 1993) ........ 13
*State v. Webster*, 865 N.W.2d 223 (Iowa 2015) ........ 9

**Other State Cases**

*Bell v. Greissman*, 902 So.2d 846 (Fla. Ct. App. 2005) ........ 16
*Black v. CSX Transportation, Inc.*, 648 S.E.2d 610 (W. Va. 2007) ........ 14
*Cannon v. Georgia*, 552 S.E.2d 922 (Ga. Ct. App. 2001) ........ 18
*Doss v. Georgia*, 590 S.E.2d 208 (Ga. Ct. App. 2003) ........ 15
*Foley v. Virginia*, 379 S.E.2d 915 (Va. 1989) ........ 12
*Foster v. Georgia*, 574 S.E.2d 843 (Ga. Ct. App. 2002) ........ 18
*Four Wood Consulting, LLC v. Fyne*, No. 4D06-4586, 2007 WL 2376685 (Fla. Ct. App., Aug. 22, 2007) ........ 16
*Guoth v. Hamilton*, 615 S.E.2d 239 (Ga. Ct. App. 2005) ........ 15

*Imbimbo v. Florida*, 555 So.2d 954 (Fla. 4th 1990) ..... 16
*Ivey v. Georgia*, 574 S.E.2d 663 (Ga. Ct. App. 2002) ..... 15
*Jackson v. Georgia*, 562 S.E.2d 847 (Ga. Ct. App. 2002) ..... 18
*Knop v. McCain*, 561 So. 2d 229 (Ala. 1989) ..... 7
*Mathena v. Burchett*, 369 P.3d 487 (Kan. 1962) ..... 8
*McConnell v. Akins*, 586 S.E.2d 688 (Ga. Ct. App. 2003) ..... 14
*McGill v. Virginia*, 391 S.E.2d 597 (Va. Ct. App. 1990) ..... 12
*Montana v. Good*, 43 P.23d 648 (Mont. 2002) ..... 5
*Morgan v. Commonwealth of Kentucky*, 189 S.W.3d 99 (Ky. 2006) ..... 8
*Mulvey v. Georgia*, 551 S.E.2d 761 (Ga. Ct. App. 2001) ..... 14
*O'Dell v. Miller*, 565 S.E.2d 407 (W.Va. 2002) ..... 18
*Salgado v. Florida*, 829 So.2d 342 (Fla. Ct. App. 2002) ..... 16
*Shane v. Kentucky*, 243 S.W.3d 336 (Ky. 2007) ..... 8
*State v. Hayes*, 908 P.2d 597 (Kan. 1995) ..... 16
*Walls v. Kim*, 549 S.E.2d 797 (Ga. Ct. App. 2001) ..... 14

**Other Sources**

3 Wigmore §§ 774-778 ..... 19
American Bar Association, *Principles for Juries & Jury Trials*, p. 14 (2005) ..... 10
Bennett, Judge Mark W., *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149 (Winter 2010) ..... 10
Cleary, Edward W. et al., *McCormick on Evidence*, § 6 (3d ed. 1984) ..... 20
Cleary, Edward W., et al., *McCormick on Evidence*, § 52 (3d ed. 1984) ..... 21
Fed. R. Evid. 611 advisory committee's note ..... 20, 21

## I. VOIR DIRE

### *1) The U.S. Constitution, Court Rules, and Case Law Guarantee Impartial Trials by Jury*

The U.S. Constitution holds the right to a trial by jury as inviolate. U.S. Const. Amend. VII. Federal courts have reinforced this right, stressing that this amendment guarantees defendants the right to an impartial jury. *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *see also Wainwright v. Witt*, 469 U.S. 412, 429-430 (1985) (emphasizing the serious duty a trial court has to determine question of actual bias). This right is "a basic and fundamental feature of our system of federal jurisprudence." *Bailey v. Central Vt. Ry.*, 319 U.S. 350, 354 (1943) (quoting *Jacob v. New York City*, 315 U.S. 752, 752 (1942)).

Juries which are free from bias or prejudice provide the foundation for fair trials. To ensure fair and impartial juries, the U.S. Supreme Court has created court rules requiring potential jurors to be examined under oath, and grants the parties or their attorneys the right to conduct this examination. Fed. R. Civ. Pro. 47(a). Most importantly, the U.S. Supreme Court has created a rule which allows courts to exclude jurors for cause, and the courts have interpreted impartiality to constitute good cause. Fed. R. Civ. Pro. 47(c); *see also*, *Cravens v. Smith*, 610 F.3d 1019, 1031 (8th Cir. 2010) ("A district court is required to strike for cause any juror who is shown to lack impartiality or the appearance of impartiality…").

The United States Supreme Court stated: "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors…" *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991) (emphasis added). Neither the Federal Rules of Civil Procedure nor the United States Code provide a brightline test for what warrants a challenge for cause, and case law has interpreted these statutes narrowly, stating that a juror may only be properly challenged if there is a "provable and legally cognizable basis of partiality." *Swain v.*

*Alabama*, 380 U.S. 202, 220 (1965); *see also Moran v. Clarke*, 443 F.3d 646, 650 (8th Cir. 2006) (emphasizing that the party seeking to strike for cause must show that the juror is unable to put aside their impressions or opinions and render an impartial verdict).

Fundamental fairness includes the right to trial before an impartial decision maker. *Singer v. United States*, 380 U.S. 24, 36 (1965). When a juror finds facts without the appropriate mindset, the viability of the jury system is seriously undermined. *See Pena-Rodriguez v. Colorado*, 580 U.S. 206, 223 (2017) ("Permitting racial prejudice in the jury system damages both the fact and the perception of the jury's role as a vital check against the wrongful exercise of power by the State.") (internal quotations omitted). To be denied the jury to which one is entitled under the Constitution is prejudicial. The wrongful denial of a challenge for cause may not seem to present a serious "tangible" harm to an individual litigant if the panelists who are biased are stricken with peremptory challenges. But the failure to excuse for cause who are biased denies one party the jury he or she was, in fact, constitutionally entitled to have. The United States Supreme Court and Iowa federal courts have long recognized that while there is no "constitutional right" to peremptory challenges, the challenges constitute a necessary part of trial by jury. *See U.S. v. Johnson*, F. Supp. 2d 721, 775-76 (N.D. Iowa 2005), citing *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) ("We have long recognized that peremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury.").

When a juror who should have been removed for cause is not, and a party must then remove the juror using a peremptory challenge, the party effectively loses that peremptory challenge to which he or she is entitled by law. *See Montana v. Good*, 43 P.23d 648, 956 (Mont. 2002). This failure to exercise jurors for cause violates the Equal Protection Clause of the United States Constitution. U.S. Const. amend. XIV, § 1. Any potential juror who expresses concern

about his or her ability to be fair should be immediately excused. Attempts to "rehabilitate jurors" should be forbidden. In the treason case of Aaron Burr, Chief Justice John Marshall sitting as the trial judge wrote:

> Why do personal prejudices constitute a just cause of challenge? Solely because the individual who is under their influence is presumed to have a bias on his mind which will prevent an impartial decision of the case, according to the testimony. He may declare that notwithstanding these prejudices he is determined to listen to the evidence, and be governed by it; but the law will not trust him… Such a person may believe that he will be regulated by testimony, but the law suspects him, and certainly not without reason. He will listen with more favo[r] to that testimony which confirms, than to that which would change his opinion; it is not to be expected that he will weigh evidence or argument as fairly as a man whose judgment is not made up in the case.

*U.S. v. Burr*, 25 F. Cas. 49, 50 (D. Vir. 1807).

What the Chief Justice recognized so long ago remains true, and has been exacerbated by the efforts of wrongdoers to destroy the public's faith in and understanding of the civil justice system. Any panel member who expresses hesitation about his or her ability to serve fairly must be excused without any questioning designed to persuade or intimidate the panelist into agreeing that he or she "would follow the court's instruction" or similarly worded leading questions. As Justice Marshall recognizes, the panelist may say and even believe that he or she can be governed by the evidence, but that will actually be impossible. *Id.* The panelist is likely to hear only the evidence that confirms his or her previously held beliefs and opinions. The panelist must be excused for cause under Federal Rule of Civil Procedure 47(c).

In this case, the most likely reason a prospective juror may be challenged by a party for cause is under Federal Rule of Civil Procedure 47(c). While the federal rule does not contain an explicit list of scenarios that might constitute good cause, the opinion in *Cravens v. Smith* is on point. 610 F.3d 1019 (8th Cir. 2010). In that case, a small business owner was impaneled as a juror, but was struck for cause after indicating that because he had had disputes with insurance

companies, he would be biased against the insurance company in the case. *Id.* at 1030-31. On appeal, the Appellant claimed that the juror was improperly struck. *Id.* at 1030. The Court of Appeals for the Eighth Circuit ruled otherwise, holding that since the juror admitted that his gut feeling was that he would likely decide against the insurance company even after hearing all the evidence, the district court did not err in striking him for cause. *Id.* at 1032.

A slightly different scenario is illustrated in *Knop v. McCain*, 561 So. 2d 229, 234 (Ala. 1989). In that case, two prospective jurors should have been disqualified for cause on the motion of plaintiff's counsel in a medical malpractice case. *Id.* at 234. Although both prospective jurors responded to defense questions by stating that they could determine the case based on the evidence and the law given them by the court, one prospective juror stated that in her opinion people were "too quick to sue" and that "evidence would have to be overwhelming" for the plaintiff before the perspective juror would be "willing to give her money." *Id.* at 232. The other prospective juror stated that she "probably" could be fair and impartial although there was "some" doubt. *Id.* That was enough doubt for the appellate court, which reversed the case. *Id.* at 235.

The Kansas Supreme Court has described the duty of providing for an impartial and unbiased jury as follows:

> [T]here is no more important feature of a trial than the impaneling of an impartial and unbiased jury, and the courts are very liberal in allowing inquiries into the competency and qualifications of persons called as jurors. The examination serves a double purpose – first, to learn whether there is a disqualification or cause for challenge, and, second, to enable a party to determine whether he shall exercise the right of peremptory challenge given by statute. So careful is the law that a fair jury may be obtained that it not only provides for the exclusion of those shown to be partial or prejudiced, but it gives each party the added right to challenge a certain number not shown to be prejudiced or disqualified, whom the parties may desire to exclude for reasons not recognized by law. Apart from admitted bias or prejudice, persons may be excluded from the panel because of possible prejudice on account of pecuniary interest, relationship, or business connection with the

parties to the action.

*Mathena v. Burchett*, 369 P.3d 487, 490 (Kan. 1962).

The U.S. Supreme Court has held that when a party is forced to use a peremptory challenge to strike a juror who should have been removed for cause, they have not been deprived of any rights. *United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000). However, numerous state supreme courts have found otherwise.[1] For example, when the Kentucky Supreme Court overruled the "presumed prejudice/per se reversible error" standard that had been applied in that state for over 170 years, the Court was deeply divided. *Morgan v. Commonwealth of Kentucky*, 189 S.W.3d 99, 115 (Ky. 2006). Justice Cooper's scathing and historically detailed nineteen-page dissent was the basis of the reversal of Morgan a mere eighteen months after it had been decided. *See Shane v. Kentucky*, 243 S.W.3d 336, 343 (Ky. 2007). There is an implicit recognition that a litigant is entitled to due process and if an act of the trial court negates such process, reversal is required. *Id.*

***2) Effective Voir Dire Prevents Bias and Prejudice from Tainting Trial***

A fair trial requires an absence of actual bias and prejudice. *See Thomas v. Lumpkin*, 143

[1] *See also Busby v. Florida*, 894 So.2d 88, 96–105 (Fla. 2004) (rejecting *Ross* and retaining its per-se reversible error rule); *Fortson v. Georgia*, 587 S.E.2d 39, 41 (Ga. 2003) (recognizing that forcing defendant to use peremptory challenge to strike juror that should have been removed for cause is per se harmful error); *Maine v. McLean*, 815 A.2d 799, 805 (Me. 2002) ("[W]hen a defendant's right to have jurors selected in the manner prescribed by the Rules is impaired, as it was in this case, it would be virtually impossible for the State to show after conviction that the injury to the defendant is harmless, and equally difficult for the defendant to demonstrate prejudice."); *Whitney v. Maryland*, 857 A.2d 625, 633 (Md. 2004) (refusing to abandon "per se" rule); *Montana v. Good*, 43 P.3d 948, 959–60 (Mont. 2002) (prejudice presumed if juror should have been excused for cause, peremptory strike is used and defendant's peremptory strikes are exhausted – structural error not subject to harmless error analysis); *New York v. Cahill*, 809 N.E.2d 561, 578 (N.Y. 2003) (error in denying challenge for cause not rendered harmless because juror is later excused by peremptory challenge – the loss of the peremptory challenge constitutes the harm); *Hanson v. Oklahoma*, 72 P.3d 40, 48–49 (Okla. Ct. App. 2003) (reversal required when juror should have been removed for cause, defendant exhausted peremptories and identified an additional juror he would have stricken); *Brown v. Virginia,* 533 S.E.2d 4, 8 n.2 (Va. Ct. App. 2000) (prejudicial error occurs when trial court forces defendant to use peremptory challenge afforded by statute to excuse juror who should have been excused for cause); *Johnson v. Texas*, 43 S.W.3d 1, 10–11 (Tex. Ct. App. 2001) (Johnson, J. concurring) (primary rationale for peremptory challenges is to help secure the constitutional guarantee of trial by impartial jury; new trial required when trial court improperly denies challenge for cause forcing use of peremptory challenge).

S. Ct. 4, 10 (2022) ("…[s]eating even one biased juror infringes on a … defendant's Sixth Amendment right."). But preventing bias and prejudice from influencing a trial requires a thorough and vigorous vetting of potential jurors. This is particularly true in cases like the present one, where potential jurors might have had similar experiences. By discovering bias and prejudice, *voir dire* safeguards against the corruption of jury panels, the erosion of our civil justice system, and the degradation of litigants' right to trial by jury.

Unfortunately, bias and prejudice are innate characteristics often deeply ingrained and concealed from our own self-examination. The United States Supreme Court recognized this when it said that "[b]ias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence." *Crawford v. United States*, 212 U.S. 183, 196 (1909). In addition, bias or prejudice can exist in someone "who was quite positive that he had no bias and said that he was perfectly able to decide the question wholly uninfluenced by anything but the evidence." *Id.* The Iowa Supreme Court has echoed this sentiment, finding "unsatisfying the notion that the principal consideration in determining bias is the potentially biased juror's own assurances that he or she can be impartial." *State v. Webster*, 865 N.W.2d 223, 248 (Iowa 2015) (J. Hecht, concurring in part, dissenting in part).

Prospective jurors often cannot or do not acknowledge their own biases and prejudices when asked general *voir dire* questions. *See id.* Other courts have also noted this inherent shortcoming, even among honest panel members. The Tenth Circuit Court of Appeals has stated that a panel member may be deemed biased and struck for cause despite an honest belief that he or she can be impartial. *Gonzales v. Thomas*, 99 F.3d 978, 989 (10th Cir. 1996). This is notable if similarities exist between the panel member's experience and the incident at issue at trial "that would inherently create in [the] juror 'a substantial emotional involvement adversely affecting

impartiality.'" *Id.* Put another way, "the issue for implied bias is whether an average person in the position of the juror in controversy would be prejudiced," not the juror's own profession of impartiality. *U.S. v. Powell*, 226 F.3d 1181, 1188 (10th Cir. 2000).

The American Bar Association, in guidelines dedicated to improving juries and jury trials, has echoed the importance of striking jurors who might be biased. Among its formal recommendations for *voir dire*, it advocates the following:

> At a minimum, a challenge for cause to a juror should be sustained if the juror has an interest in the outcome of the case, may be biased for or against one of the parties… or may be unable or unwilling to hear the subject case fairly and impartially. There should be no limit to the number of challenges for cause.
>
> In ruling on a challenge for cause, the court should evaluate the juror's demeanor and substantive responses to questions. If the court determines that there is a reasonable doubt that the juror can be fair and impartial, then the court should excuse him or her from trial.

Ex. 1, American Bar Association, *Principles for Juries & Jury Trials*, p. 14 (2005). The parties and this Court should strive to seat an impartial jury. If reasonable doubt exists about a panel member's ability to be impartial, that panel member should be struck for cause.

***3) Rehabilitation of Panel Members Should Be Limited and Used with Caution***

Juror rehabilitation is likely to be ineffective at removing the bias expressed by a potential juror. Simply put, jurors do not come equipped with an on/off switch. A jurors' own bias toward one side or another, or towards one particular position on the law cannot be turned off simply at the command of the judge. *See* Judge Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149 (Winter 2010). Rather, jurors may potentially harbor such biases throughout the trial, making the administration of justice prejudicial to one side or another. *Id.*

These biases, known as implicit biases, are outside of the control of an individual's own conscious mind. They can manifest themselves in any form, whether based on race, beliefs about the law, or any other subject of importance to a particular case. *Id.* By trying to "rehabilitate" jurors during *voir dire* instead of opting to excuse the jurors for cause, a judge can allow prejudiced jurors to be impaneled. This can lead to jurors paying little attention to evidence one party presents because their subconscious has already decided how they are going to rule on the case. *See id.* Thus, this Court should follow Judge Bennett's recommendation not to try to rehabilitate jurors that should be struck for cause as discussed in the prior section regarding federal law.

To seat an impartial jury, a wide latitude is necessarily afforded counsel in examining jurors. Close ended questions that suggest one correct answer, for example—"Mrs. Smith, you could certainly set aside your feelings about the plaintiff and look at the evidence impartially, couldn't you?"—do not suffice, particularly if such questions come from the judge, who is a respected authority figure.[2]

Courts should not allow jurors to "self-qualify," or to issue a blanket assertion that they would be able to cast aside acknowledged biases or prejudice and serve impartially. Only the Court can decide if a potential juror is impartial.

> [T]he question whether a venireman is biased has traditionally been determined through voir dire culminating in a finding by the trial judge concerning the venireman's state of mind. […] [S]uch a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province.

---

[2] A judge holds one of the most esteemed positions in society. In the courtroom, the judge is referred to as "Your Honor," is distinguished by attire, is physically elevated over everyone else, and has near plenary power. Because of this high status, many potential jurors will seek approval when answering questions from a judge—even at the expense of hiding their true feelings and opinions. *See* Susan E. Jones, *Judge- Versus Attorney-Conducted Voir Dire: An Empirical Investigation of Juror Candor*, 11 Law & Human Behav. 131, 143 (1987) ("Subjects changed their answers almost twice as much when questioned by a judge as they did when interviewed by an attorney … [I]t appears there may be implicit pressures in the courtroom toward conformity to a 'perceived standard' that differs depending upon who conducts *voir dire*.").

*Wainwright v. Witt*, 469 U.S. 412, 428 (1985).

Social science teaches that peoples' belief systems are fixed and virtually immovable. The notion that such beliefs can be set aside is both wrong and dangerous. A few loaded questions from an authority figure cannot suffice to assure a fair trial from panel members who have already stated in public that they are, in fact, biased. Rehabilitation should not be permitted because it is simply impossible. To permit biased jurors to serve deprives a plaintiff of his or her constitutional right to a fair trial.

A trial judge who seeks to rehabilitate a prospective juror may unconsciously become an advocate for the juror's impartiality and may create unreliable responses from the juror. *See McGill v. Virginia*, 391 S.E.2d 597, 600 (Va. Ct. App. 1990). "A juror's desire to 'say the right thing' or to please the authoritative figure of the judge, if encouraged, creates doubt about the candor of the juror's responses." *Id.*, citing *Foley v. Virginia*, 379 S.E.2d 915, 921 (Va. 1989). It is imperative that a court not become an advocate of any party's cause. *State v. Cuevas*, 288 N.W.2d 525, 531 (Iowa 1980). A court's rehabilitative efforts towards jurors may have such a residual effect. The *McGill* court noted:

> A trial judge who actively engages in rehabilitating a prospective juror undermines confidence in the voir dire examination to assure the selection of fair and impartial jurors. The proper role for a trial judge is to remain detached from the issue of the juror's impartiality. **The trial judge should rule on the propriety of counsel's questions and ask questions or instruct only where necessary to clarify and not for the purposes of rehabilitation.**

*McGill*, 391 S.E.2d at 600 (emphasis added).

The Iowa Supreme Court has agreed with this notion and Iowa has historically held peremptory strikes to be invaluable to the jury selection process and the protection of fair trials. "Confidence in the fairness and impartiality of each member of the jury . . . is of the greatest importance to the welfare of the state. Indeed, it is of such paramount importance to every citizen

that the time and expense necessary to secure jurors as to whom no doubt may rightly exist is an insignificant consideration." *State v. Beckwith*, 46 N.W.2d 20, 26 (Iowa 2011), *abrogated by State v. Neuendorf*, 509 N.W.2d 743 (Iowa 1993) (in which the Court again stated the importance of an impartial jury, but held that error in denying a challenge for cause does not automatically require reversal.). In *Beckwith*, the Court reviewed the denial of a motion of dismissal for cause. 46 N.W.2d at 20. The juror in question had some actual knowledge of the issue in the case, stating "I think that what I have heard might influence me in my verdict even though I tried not to let it do so." *Id.* at 24. The court then examined the juror, asking:

> Well, you understand that if you were selected as—to sit as a juror in this case you take an oath and you are to arrive at your verdict solely upon the evidence that you hear in the court room or the exhibits that are introduced? A. Yes, sir.
>
> The Court: And accordingly apply those facts according to the law as the court gives it to you in the instructions? A. Yes.
>
> The Court: You understand that? A. Yes.
>
> The Court: Notwithstanding any prejudice or opinion that you might now have. Can you do that? A. Yes, I can do it.
>
> The Court: Will you do it? A. Yes.
>
> The Court: Challenge is overruled.

*Id.*

Upon review, the Iowa Supreme Court stated "[The court] succeeded in eliciting statements that the juror would arrive at a verdict solely upon the evidence and the instruction. The effect of these answers, however, is much weakened by the fact that the court first instructed the juror that it would be his duty to do just that." *Id.* at 25. The Court went on to state "it seems to us that the effect [of the court's questioning] was to put a considerable degree of pressure upon the juror to make the answers that would show him qualified." *Id.* at 26. For these reasons,

the Court held that "it seems abundantly clear" that the challenge for cause should have been sustained, rejecting the attempt by the trial court judge at "rehabilitating" the biased juror. *Id.*

In *Black v. CSX Transportation, Inc.*, an asbestos exposure case, the court found that a prospective juror who had expressed bias against personal injury lawyers, asbestos case plaintiffs, and damage awards predicated on anything other than pure objective science should have been excused for cause, even though he had also stated that he could render a verdict based upon the evidence and the law. 648 S.E.2d 610, 616–17 (W. Va. 2007). The Court reiterated that trial judges "must resist the temptation to 'rehabilitate' prospective jurors simply by asking the 'magic question' to which jurors respond by promising to be fair when all the facts and circumstances show that the fairness of that juror could be reasonably questioned." *Id.* at 616.

Similarly, in *Walls v. Kim*, 549 S.E.2d 797 (Ga. Ct. App. 2001), *aff'd by Kim v. Walls*, 563 S.E.2d 847 (Ga. 2002), the court found that the trial court should have excused a biased juror for cause despite her affirmative answers to rehabilitative questions from the judge. It stated as follows:

> [W]e disagree with the way that the 'rehabilitation' question has become something of a talisman relied upon by trial and appellate judges to justify retaining biased jurors. Especially when the better practice is for judges simply to use their discretion to remove such partial jurors, even when the question of a particular juror's impartiality is a very close call. **A trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors because, in reality, the judge is the only person in a courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury.** While the parties to litigation operate under the guise of selecting an impartial jury, the truth is that having a jury which is truly fair and impartial is not their primary desire. Instead, their goal is to select a jury which, because of background or experience or whatever other reason, is inclined to favor their particular side of the case.

*Id.* at 798 (emphasis added); *accord, McConnell v. Akins*, 586 S.E.2d 688, 690 (Ga. Ct. App. 2003); *Mulvey v. Georgia*, 551 S.E.2d 761, 764 (Ga. Ct. App. 2001).

The *Walls* rationale has been repeatedly applied by the Georgia Court of Appeals in order to support the impropriety of juror "rehabilitation" from the bench. For example, in *Ivey v. Georgia*, 574 S.E.2d 663, 665 (Ga. Ct. App. 2002), the Court proclaimed:

> In too many cases, trial courts confronted with clearly biased and partial jurors use their significant discretion to 'rehabilitate' these jurors by asking a version of this loaded question: After you hear the evidence and my charge on the law, and considering the oath you take as jurors, can you set aside your preconceptions and decide this case solely on the evidence and the law? Not so remarkably, jurors confronted with this question from the bench almost inevitably say, 'yes'. Such biased jurors even likely believe that they can set aside their preconceptions and inclinations – certainly every reasonable person wants to believe he or she is capable of doing so. Once jurors affirmatively answer the 'rehabilitation' question, judges usually decide to retain these purportedly rehabilitated jurors.

*See also, Doss v. Georgia*, 590 S.E.2d 208, 213 (Ga. Ct. App. 2003) ("[I]t is completely improper for counsel, and especially for the trial court, to browbeat the juror into affirmative answers to rehabilitative questions by using multiple, leading questions.").

In *Guoth v. Hamilton*, a prospective juror admitted during *voir dire* that her ability to be impartial was impaired by her knowledge of the parties and of the facts of the case. 615 S.E.2d 239, 243–44 (Ga. Ct. App. 2005). The appellate court found that the trial court erred in failing to disqualify the prospective juror for cause and that the court's requests that she be impartial did not outweigh her previously stated bias. *Id.*

The Kansas Supreme Court has stated that counsel should receive wide latitude in questioning jurors who have answered "stock questions" about their ability to be fair and follow instructions. Counsel, the court said,

> should not necessarily be limited to "stock questions" such as "Have you formed an opinion as to the accused's innocence or guilt?" or "Will you be able to determine guilt based only on the evidence presented?" Answers to such questions do, of course, go to the heart of the inquiry and are given under oath and therefore deserve a heavy presumption of correctness. Nevertheless, it is conceivable that prospective jurors with the purest of intentions may, in the heat of the moment in front of their peers, underestimate their own bias. Consequently,

> "[c]onsiderable latitude should be allowed counsel in the examination of jurors, so that all who have bias or prejudice, or are otherwise disqualified, may be eliminated." Ultimately, whether ruling on challenges for cause or the scope or extent of questioning, trial courts should consider special circumstances that may be present.

*State v. Hayes*, 908 P.2d 597, 599 (Kan. 1995).

In Florida, a new trial is mandated if there is a reasonable doubt as to whether a juror is impartial. *Four Wood Consulting, LLC v. Fyne*, No. 4D06-4586, 2007 WL 2376685, at *2 (Fla. Ct. App., Aug. 22, 2007). "Reasonable doubt" has been found where a juror displays or admits to bias or prejudice, even though the juror later asserts that he or she could probably follow the court's instructions. *See Imbimbo v. Florida*, 555 So.2d 954 (Fla. 4th 1990). For example, in *Bell v. Greissman*, the district court held that a medical malpractice plaintiff was entitled to a new trial as a remedy for the trial court's failure to grant the plaintiff's challenge for cause against a juror whose comments were not indicative of a "neutral mind." *See* 902 So.2d 846 (Fla. Ct. App. 2005). During voir dire, the juror in question stated that he believed in damages caps and that the absence of such had been detrimental to the healthcare system. *Id.* at 847. He also stated the he would try to keep an open mind and that he would be fair. *Id.* The court denied the plaintiff's challenge for cause and also denied another challenge as to a different juror. *Id.* The plaintiff exhausted her peremptory challenges, thereby precluding her from challenging two other jurors that she identified as ones against whom she wanted to use peremptory strikes. *Id.* The reviewing court concluded that the totality of the juror's remarks raised reasonable doubt as to his ability to be impartial. *Id.* It stated that, "A juror is not impartial when one side must overcome a pre-conceived opinion in order to prevail." *Id.*; *see also, Salgado v. Florida*, 829 So.2d 342, 345 (Fla. Ct. App. 2002) (even when a prospective juror eventually states that he will follow the law, the court should grant a challenge for cause if it appears that the prospective juror is nevertheless not

in the state of mind to do so).

Instead of directing "rehabilitation" questions that suggest only one correct answer, the Court should permit the attorneys to ask open-ended questions that better assess bias and impartiality, and that advance our state's guarantee to a fair trial. Furthermore, the court should be highly suspicious of any guarantees of impartiality offered by potential jurors, especially when said guarantees are elicited by the court's own questioning.

A fair and impartial jury is inextricably linked to the parties' constitutional right to a fair trial. This Court has a duty to oversee a thorough and efficient voir dire. That duty includes striking panel members for cause if the Court has a reasonable doubt about their ability to serve impartially. And it includes limiting the ability for any party or the Court to attempt to rehabilitate any panel member who has expressed any hesitancy about his or her ability to be fair. The United States Constitution demands no less.

***4) Preponderance of Evidence Standard***

The burden of proof that the Plaintiff is held to for every issue, including damages, is the preponderance of the evidence. Plaintiff's counsel, throughout the course of her career, has found that some individuals are not comfortable with the preponderance standard. Some individuals require that they be "100% certain" in their decisions, or "75% certain," particularly with respect to damages. This is not the standard that Plaintiff is required to prove his or her case, and is a standard above even what is required for a criminal case.

If a prospective juror states that he or she cannot, will not, or might not follow the preponderance standard, he or she should not be seated on the jury. If Plaintiff discovers a prospective juror who requires more certainty than required by the preponderance of evidence standard, Plaintiff will move to challenge the juror for cause and the juror must be struck for

cause. Plaintiff is entitled to a completely impartial jury; to be able to get an impartial jury by using all of their peremptory challenges for reasons not related to cause; and to have any panelist who expresses doubt be excused for cause.

***5) Special Challenges Relating to Public Perception***

The dynamics of the present case make our State's guarantee of a fair trial particularly important. In this action, dealing with polarizing topics, the Court must carefully scrutinize potential jurors for bias and prejudice. In essence, this Court serves as the trier of fact in determining whether prospective jurors can serve impartially and provide the parties a fair trial. Under the federal rules, this Court has the discretion to decide what constitutes cause to strike that prospective juror. Fed. R. Civ. Pro. 47(c); *see also*, *Cravens v. Smith*, 610 F.3d 1019, 1030-1032 (8th Cir. 2010) (denying defendant's request to reverse the District Court's decision to strike a biased juror for cause).

State courts have also offered their perspective: trial courts may not rely solely on a prospective juror's isolated and extracted statement of impartiality, but must consider the juror's conduct throughout the entire voir dire. *Foster v. Georgia*, 574 S.E.2d 843, 850 (Ga. Ct. App. 2002). Nor may a prospective juror's assurances of impartiality overcome a bias where the record shows on its face that such a bias is present. *Cannon v. Georgia*, 552 S.E.2d 922, 924 (Ga. Ct. App. 2001), *overruled on other grounds by Jackson v. Georgia*, 562 S.E.2d 847 (Ga. Ct. App. 2002). Trial courts must resolve any question of possible bias or prejudice in favor of the party seeking to strike for cause. *O'Dell v. Miller*, 565 S.E.2d 407, 410 (W.Va. 2002). Accepting a juror's statement that she can set aside a stated bias and be impartial creates a great risk of seating biased jurors and creates "a clear appearance of prejudice" to a party. *Id.* at 411.

This issue is of utmost importance considering the dim view that many citizens have of

the civil justice system. Survey results related to lawsuits, insurance costs, and damages are stunning. Advertising campaigns sponsored by business and insurance groups disguised as grass-roots organizations, such as Citizens Against Lawsuit Abuse, Truth and Fairness in Litigation Coalition, as well as distorted media coverage of lawsuits (such as in the McDonalds' coffee case) contribute to the perception that there is a civil litigation "crisis." There is no reason to believe that the statistics discussed above do not fairly represent the views of the people of Iowa. From focus group research and post-verdict juror interviews conducted by litigation consulting firms,[3] it is abundantly clear that jurors who are preconditioned to believe assertions about meritless lawsuits and the litigation "crisis" are more likely to favor the defense or to argue for lower awards if a plaintiff's verdict is reached. Because of this significant potential bias against plaintiffs, courts and counsel must scrupulously avoid efforts to "rehabilitate" individuals on the panel that exhibit signs of such preconditioning. To do so would prejudice plaintiffs and deny them justice.

## II. **<u>EVIDENTIARY ISSUES</u>**

### ***1) Leading Questions May Be Used to Refresh Recollection***

Because five years have passed since some of the events at issue, it is likely that some witnesses will not have complete recollection of the facts. It may become necessary for counsel to refresh the witnesses' recollection. The Federal Rules of Evidence specifically permit the use of leading questions under these circumstances: "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop that witness's testimony." Fed. R. Evid. 611(c) (emphasis added); *see also*, 3 Wigmore §§ 774-778.

*McCormick on Evidence* states the rule clearly:

Similarly, when a witness has been fully directed to the subject by non-leading

[3] For example, Ex. 3, Declaration of Lin S. Lilley Consulting Firm, Austin, Texas, Signed September 10, 2001.

> questions without securing from him a complete account of what he is believed to know, his memory is said to be "exhausted" and the judge may permit the examiner to ask questions which by their particularity may revive his memory but which of necessity may thereby suggest the answer desired.

Edward W. Cleary et al., *McCormick on Evidence*, § 6, at 12 (3d ed. 1984). This court should permit counsel to use leading questions to refresh a witness's recollection at trial, should the need arise.

***2) Leading Questions and Interrogating Adverse Witnesses***

Generally, a party interrogating a witness on direct examination may not use leading questions except as may be necessary to develop a witness's testimony. Fed. R. Evid. Rule 611(c). The rule, however, makes an exception for the situation where a party calls an adverse witness on their direct examination. *Id.* The rule states that "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." *Id.*

On the cross-examination of the adverse witness by the party they share a bias in favor of, that party may not lead the witness. The advisory committee's notes to Fed. R. Evid. 611 and *McCormick on Evidence* suggest that in the situation where a witness is biased in favor of the party cross-examining them, that party should not be permitted to use leading questions. Fed. R. Evid. 611 advisory committee's note; *see also*, Edward W. Cleary et al., *McCormick on Evidence*, § 6, at 13 (3d ed. 1984). The advisory committee's comment states:

> The rule also conforms to tradition in making the use of leading questions on cross-examination a matter of right. The purpose of the qualification "ordinarily" is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example the "cross-examination" of a party by his own counsel after being called by the opponent (savoring more of re-direct) or of an insured defendant who proves to be friendly to the plaintiff.

Fed. R. Evid. 611 advisory committee's note.

In the present case, Plaintiff intends to call witnesses that are either adverse parties or are in some other way biased in favor of the Defendants. The Plaintiff intends to partially or completely use leading questions on his direct examination of his adverse witnesses in accordance with Fed. R. Evid. 611(c). When the Defendants question the witness biased in their favor, the Court should not allow them to use leading questions in accordance with the above authorities and conform to the "traditional view that the suggestive powers of the leading question are as a general proposition undesirable." Fed. R. Evid. 611 advisory committee's note.

***3) Only the Questioner May Move to Strike Any Part of the Witness's Answer***

The questioner has an interest in seeking responsive answers to his or her questions. The opponent does not. The mere fact that an answer is unresponsive is not an objection available to the opponent. Only the questioner may move to strike on that basis. If the non-responsive answer is otherwise objectionable, the opponent may move to strike it because the answer was not anticipated and contains material which is not permitted. *See, e.g.*, Edward W. Cleary et al., *McCormick on Evidence*, § 52, at 127 (3d ed. 1984). However, that objection cannot be based on the non-responsiveness.

Respectfully Submitted,

*/s/ Devin C. Kelly*

ROXANNE CONLIN AT0001642
DEVIN C. KELLY AT0011691
ROXANNE CONLIN & ASSOCIATES, P.C.
3721 SW 61st Street, Suite C
Des Moines, IA 50321-2418
Phone: (515) 283-1111; Fax: (515) 282-0477
Email: roxanne@roxanneconlinlaw.com,
dkelly@roxanneconlinlaw.com
cc: dpalmer@roxanneconlinlaw.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on August 24, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

*/s/ Deb Palmer*