UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA CENTRAL
DIVISION

| | |
|---|---|
| ROBERT BENDER,<br><br>Plaintiff,<br><br>v.<br><br><br>OTTUMWA COMMUNITY SCHOOL DISTRICT, JERRY MILLER, and DANA WARNECKE,<br><br>Defendants. | CASE No. 4:23-CV-203-SHL-HCA<br><br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING ON THE USE OF OTHER RACIST EVIDENCE (DEFENDANTS' MOTION IN LIMINE 5)** |

COMES NOW Plaintiff, by and through Counsel, and in further briefing about the use of other racist evidence at trial in this case states as follows:

**APPLICABLE LAW**

Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "[t]he fact is of consequence in determining the action." Fed. R. of Evid. 401. Relevant evidence is generally admissible unless it meets a few specific exclusions, not applicable to this case. *Id*. at 402. Other racist conduct, directed at or experienced by others, is not always relevant to the question of *whether the plaintiff's workplace was subjectively hostile*. *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 794 (8th Cir. 2004). However, such evidence is relevant and admissible for other purposes.

Other racist evidence is admissible to bolster the credibility of a plaintiff who alleges he was also subjected to racist conduct. *Williams*, 378 F.3d at 794 ("[W]e think that the testimony made more credible Mr. Williams's testimony about the environment that he was exposed to.");

*Bennett v. Nucor Corp.*, 656 F.3d 802, 810-811 (8th Cir. 2011). Furthermore, such evidence goes to knowledge, motive, and intent of the alleged bad actors. *Williams*, 378 F.3d at 794 ("[A]t trial Mr. Williams maintained (and ConAgra denied) that his firing was racially motivated. Evidence of widespread toleration of racial harassment and disparate treatment condoned by management was relevant to its motive in firing Mr. Williams"); *Bennett*, 656 F.3d at 811-812 (claimed lack of knowledge is relevant to how the alleged bad actors treated racial matters). "Evidence of the extent of the hostile environment was thus probative on the matter of managerial motives." *Williams*, 378 F.3d at 794. Such evidence also goes to the issue of punitive damages. *Williams*, 378 F.3d at 794. Such evidence is also relevant to the bad actor's defense that "it exercised reasonable care to prevent and correct promptly any harassing behavior." *Bennett*, 656 F.3d at 812 (evidence of other racist conduct probative of the company's preventive efforts.).

**ARGUMENT**

Plaintiff intends to offer evidence that racist misconduct was common and prevalent at Evans Middle School during the relevant school year and that the administration, including Defendants Miller and Warnecke, knew of it. Emails show that Defendants Miller and Warnecke were informed expressly by teachers that students complained that racism in the school environment was "terrible" and there were growing issues with "race" and "racial slurs." It was reported to these individual defendants that a student had posted a "picture of a black boy with the caption [n-word]". A teacher notified his colleagues to document anytime a student was subjected to racist misconduct and report it to Defendant Miller as he was in the process of collecting documentation on the issue. Another teacher notified Defendant Miller that a student was telling others to "go back to Nigeria" and that such comments are "said or heard regularly."

This is not an exhaustive summary.

All of this directly bolsters Mr. Bender's credibility when he states that the "n-word" was used routinely and that racist misconduct was common in the school environment. It goes to Defendants' knowledge that racism was occurring at the middle school, that they knew the extent of it, and is relevant to their claim they took appropriate actions to address it. It is anticipated that Defendants intend to introduce evidence that racist language was used against them and other white employees. Defendants cannot have it both ways. It supports the federal government's investigation into racist conduct during the 2020-2022 school years at Evans Middle School. It also specifically contradicts (impeaches) Defendant Warnecke's sworn testimony that "issues with students using racial epithets or slurs" around the school environment were never brought to her attention during the 2021-2022 school year.

Lastly, such evidence is not subject to a Rule 403 objection. All evidence is, by its nature, prejudicial to one side or the other. That is the nature of evidence. "[T]he purpose of all evidence is to sway the fact finder." *State v. Mitchell*, 633 N.W.2d 295, 301 (Iowa 1999) (Neuman, J., dissenting). This evidence is also not **substantially** outweighed by the concerns of wasting time or confusing the issues. What Defendants knew, when they knew about it, and what they did are key factual questions the jury will be asked to consider and decide, including at the instruction of Defendants.

WHEREFORE Plaintiff respectfully requests this court DENY Defendants' Motion in Limine seeking to exclude evidence of unrelated racial harassment occurring at Evans Middle School during the relevant time period.

Respectfully Submitted,

/s/ *Devin C. Kelly*
ROXANNE CONLIN AT0001642
DEVIN C. KELLY AT0011691
ROXANNE CONLIN & ASSOCIATES, P.C.
3721 SW 61st Street, Suite C
Des Moines, IA 50321
Phone: (515) 283-1111; Fax: (515) 282-0477
Email: roxanne@roxanneconlinlaw.com
dkelly@roxanneconlinlaw.com
cc: dpalmer@roxanneconlinlaw.com
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on September 2, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

*/s/ Devin C. Kelly*