**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| ROBERT BENDER,<br><br>Plaintiff,<br>v.<br><br>OTTUMWA COMMUNITY SCHOOL DISTRICT, JERRY MILLER, and DANA WARNECKE,<br><br>Defendants. | Case No.: 4-23-cv-203-SHL-HCA<br><br>**PLAINTIFF'S APPLICATION FOR REASONABLE ATTORNEYS' FEES AND ADDITIONAL EXPENSES** |

COMES NOW Plaintiff, by and through Counsel, and in support of his Application for reasonable attorneys' fees and additional expenses states as follows:

## INTRODUCTION

Plaintiff respectfully moves for an award of reasonable attorneys' fees and nontaxable litigation expenses pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k) and the Iowa Civil Rights Act, Iowa Code § 216.15(9)(a)(8). Plaintiff prevailed at trial on racial harassment claims, obtained a favorable jury verdict, and secured a judgment on the merits. As the prevailing party under both statutes' fee-shifting provisions, Plaintiff is entitled to recover a reasonable fee measured by the lodestar method, along with reasonable litigation expenses customarily billed to clients. Plaintiff submits contemporaneous billing records, counsel declarations, and affidavits establishing market rates in Iowa, and requests post-judgment interest on the fee and expense award, as allowed by law. The record demonstrates that the requested hours and rates are reasonable, that counsel exercised billing judgment[1], and that no reduction is

[1] Plaintiff's Counsel already removed attorneys' fees and costs associated with Plaintiff's claims regarding the harassment and/or retaliation at the Ottumwa high school as well as costs for Plaintiff's depositions of individuals

warranted in light of Plaintiff's excellent results.

## LEGAL STANDARDS

A prevailing plaintiff with a claim under the Iowa Civil Rights Act is entitled to his reasonable attorney fees. Iowa Code §§ 216.15(9)(a)(8); 216.16(6). The Iowa Supreme Court has adopted "the federal analytical framework for the calculation of attorney fees under the Iowa Civil Rights Act," so federal cases analyzing attorney fee claims under Title VII are apposite. *Dutcher v. Randall Foods*, 546 N.W.2d 889, 897-98 (Iowa 1996).

Prevailing parties ordinarily should recover attorney fees unless special circumstances would make such an award unjust. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); s*ee also St. Louis Fire Fighters Ass'n v. City of St. Louis*, 96 F.3d 323, 331 (8th Cir. 1996); *Bass v. Sw. Bell Tel., Inc.*, 817 F.2d 44, 46 (8th Cir. 1987). "Absent special circumstances, a prevailing party should be awarded section 1988 fees *as a matter of course*." *Hatfield v. Hayes*, 877 F.2d 717, 719 (8th Cir. 1989) (emphasis in original) (quoting *Kirchberg v. Feenstra*, 708 F.2d 991, 998 (5th Cir. 1983)).

The Court should set forth clear and concise reasons for its decision as to what amounts to award. *Hensley*, 461 U.S. at 437.

The Court expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968); *see also City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986). Civil rights suits seek to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. *Villano v. Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001).

---

whose testimony focused on Plaintiff's employment at the high school. Plaintiff's Counsel also already made substantial elimination of fees time associated with clerical staff and law clerk time.

Congress made successful civil rights plaintiffs' attorney fees recoverable from defendants to further advance this public service. *Piggie Park*, 390 U.S. at 402.

In order for such a policy to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement. "It is intended that the amount of fees awarded . . . be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases…". *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993) (quoting S. Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976)).

"The starting point in determining attorney fees is generally the lodestar." *Lee v. State* (*Lee IV*), 906 N.W.2d 186, 197 n.8 (Iowa 2018). The "lodestar" amount of fees is computed by multiplying the number of hours reasonably expended on the litigation times the reasonable hourly rates of the attorneys. *Id.*; *Blum v. Stenson*, 465 U.S. 886, 891 (1984). "[T]he minimum award [for attorney fees] should generally be not less than the number of hours claimed times the attorney's regular hourly rate." *Zoll v. Eastern Allamakee Cmty. Sch. Dist.*, 588 F.2d 246, 252 (8th Cir. 1978). There is a strong presumption that a prevailing lawyer is entitled to his lodestar fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 106 S. Ct. 3088, 3098 (1986).

Fees awarded to a prevailing party should be calculated "in the same manner that an attorney traditionally is compensated by a fee-paying client." *Hensley*, 461 U.S. at 431 (quoting *Davis v. Cnty. Of Los Angeles*, 8 Empl. Prac. Dec. (CCH) ¶ 9444, at 5049 (C.D. Cal. 1974)). The Eighth Circuit described the rate to which a plaintiff's counsel is entitled as a rate for which "attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises in order to effect a public policy intended to protect all citizens." *Casey*, 12 F.3d at 805.

The Seventh Circuit reversed a trial court's reduction of the hourly rate of two attorneys from Chicago who successfully tried a case in southern Illinois. *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743-44 (7th Cir. 2003). The Court stated:

> Fee-shifting statutes in civil rights legislation are intended to allow litigants access to attorneys who would otherwise be inaccessible, given the low retainers many plaintiffs can afford…. For that reason, our preference is to compensate attorneys for the amount that they would have earned from paying clients, *i.e.*, the standard hourly rate…. An attorney may charge higher than the community's average if she possesses an unusual amount of skill, the ability to emphasize [sic] with the jury, investigative abilities, or other qualities which command a premium…. Only if an attorney is unable to provide evidence of her actual billing rates should a district court look to other evidence, including "rates similar experienced attorneys in the community charge paying clients for similar work"…. *However, just because the proffered rate is higher than the local rate does not mean that a district court may freely adjust that rate downward.* When a local attorney has market rates that are higher than the local average, "[a] judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community"….

*Id.* (emphasis added).

It is not necessary to record in great detail exactly how every minute of attorney time was expended, as long as counsel identifies the general subject matter of her time expenditures. *Hensley*, 461 U.S. at 437 n.12. Plaintiff has provided such documentation.

Federal courts have consistently analyzed the twelve "*Johnson* factors" to help determine the appropriate amount of fees.[2] *Hensley*, 461 U.S. at 430 n.3 (citing *Johnson v. Georgia*

---

[2]In the past, Iowa appellate courts have considered a very similar list of factors: the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar services. *See Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990); *Gabelmann v. NFO, Inc.*, 606 N.W.2d 339 (Iowa 2000); *Dutcher*, 546 N.W.2d at 897. That list originally came from the Iowa Code of Professional Responsibility and its criteria to consider in setting a reasonable attorney fee. *See* Iowa Code of Prof'l Responsibility DR 2-106B. In 2005, the Iowa Rules of Professional Conduct replaced the Iowa Code of Professional Responsibility. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 696 n.1 (Iowa 2008). The considerations now listed in the ethical rules now more closely mirror the traditional *Johnson* factors used by federal courts. *See* IOWA RULE PROF'L CONDUCT 32:1.5.

*Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *see also Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990); *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988); *Winter v. Cerro Gordo Cnty. Conservation Bd.*, 925 F.2d 1069, 1074 n.8 (8th Cir. 1991). The *Johnson* factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*See Johnson,* 488 F.2d at 717-19.

"The district court must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for handling the complete case." *Landals*, 454 N.W.2d at 897. Only those fees and costs "wholly unrelated to the common core of facts or legal theories" should be reduced. *Lee IV*, 906 N.W.2d at 197 (quoting *Lee v. State (Lee III)*, 874 N.W.2d 631, 650 (Iowa 2016)).

The United States Supreme Court has expressed reservations about whether courts ought to be deviating from the lodestar absent exceptional circumstances. *See Perdue*, 559 U.S. at 551-52. It characterized the lodestar calculation as "the guiding light of our fee-shifting jurisprudence." *Id.* (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Clearly, the attorney's prevailing rate in the community is strongly presumptive of the correct rate that should be awarded. *See Id.* at 551-53. The lodestar should already consider factors such as ensuring the fees are sufficient to attract capable attorneys to represent civil rights claimants. *Id.* at 552.

---

In *Lee IV*, 906 N.W.2d at 197 n.8 the Iowa Supreme Court once again cited its original list; however, the appropriateness of their continued use was not a litigated issue. Although it makes no difference in the outcome of this case, Plaintiff believes the *Johnson* factors correctly set forth the relevant considerations.

Plaintiff does not request any enhancement of the fee award, but asks only that the Court utilize the lodestar method and decide the appropriate amount of fees based on counsels' prevailing, market-based rates.

**ANALYSIS OF THE JOHNSON FACTORS TO THE PRESENT CASE**

***1. The Time and Labor Required.***

The jury found that Defendants failed to take reasonable and appropriate action to protect Plaintiff from racial harassment by students and awarded him $425,000.00 in emotional distress damages. The fees expended to secure justice for Plaintiff and to protect other employees were very reasonable when judged against the jury's verdict. No hours were expended by any attorney or employee of Plaintiff's counsels' law firms that were not essential to the preparation and successful trial of the case. The parties conducted extensive discovery and took numerous depositions. The trial lasted nearly five days and multiple witnesses were called. Some witnesses were called by both parties.

There is no question it requires fewer hours to lose a trial than to win a trial. But to win often requires an enormous investment. Plaintiff's counsel made that investment of time, money, and energy. The law entitles them to a full recovery for all the hours actually spent at the hourly rate requested.

***2. The Novelty and Difficulty of the Question***

Civil rights claims come bearing 50+ years of constantly evolving history. Lawyers who handle such claims must stay abreast of various state and federal statutes, along with case law from the federal system, as well as all 50 states. *See Pippen v. State*, 854 N.W.2d 1, 30 (Iowa 2014) (Iowa Supreme Court looks "to federal caselaw, and the caselaw of other states under their state civil rights statutes, for persuasive guidance" in interpreting the ICRA). The case at bar

involved state and federal claims and state and federal statutes and case law interpreting those statutes are important resources that help establish the parameters of those claims.

Both Congress and the United States Supreme Court have acknowledged that civil rights cases have a complexity equivalent to antitrust cases. *See Blum*, 465 U.S. at 893. The Court is familiar with the substantive and evidentiary issues which arose in the case. There are relatively few plaintiff's attorneys in Iowa with significant expertise on the Iowa Civil Rights Act. Some of the key legal issues involved were more unique and without much precedent, especially in Iowa and/or the Eighth Circuit. Specifically, this case centered around the evolving issue of school-employer liability for student-on-teacher harassment. It also involved questions of liability for workplace harassment when the workplace is by its nature one where some misconduct could be expected.

Defendants filed a lengthy motion for summary judgment shortly before trial – knowing full-well that many of the facts were disputed and needed to be decided by a jury. However, given that Plaintiff could not afford for the case not to get to a jury required substantial time conducting legal research and formulating both factual and legal arguments to address Defendants' motion and brief.

***3. The Skills Requisite to Perform the Legal Services.***

True trial lawyers, especially those with the skill, experience, and expertise to try civil rights matters, are becoming a rare commodity. "While there appears to be no shortage of 'litigators,'— indeed they seem to be propagating throughout the profession—true federal civil 'trial lawyers,' those willing to delve into the crucible of federal civil jury trials on a regular basis, are becoming an endangered species." *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1190 (N.D. Iowa 2003). These attorneys "are certainly entitled to a premium fee in comparison

to litigators who push lots of papers, take lots of depositions, file lots of motions, but who seldom actually try cases in federal court." *Id.*

There are relatively few plaintiff's attorneys firms in Iowa with significant expertise handling cases arising under the Iowa Civil Rights Act than that of Roxanne Conlin and Associates, P.C. The nature of this case, the legal issues, and the witnesses all required significant skill to handle successfully.

***4. The Preclusion of Employment by the Attorney Due to Acceptance of the Case.***

The attorneys at Roxanne Conlin and Associates, P.C. have plenty of work available to them for which they could readily earn the hourly rates requested here. They could not do much of that work during the time they were preparing this case and trying it, because they were instead working on this case.

Plaintiff's attorneys accept less than 10 percent of the cases offered to them. That is true for Roxanne Conlin and Associates, P.C. Many cases with merit must be declined simply because of time constraints.

Plaintiff's counsel accepted the responsibility for this case because the evidence of unaddressed student-on-teacher racial harassment was breathtaking. Robert Bender had a meritorious case, a compelling personal story, and needed legal help. Plaintiff's counsel had no need to take on additional work. At the time the case was accepted, counsel already had more than a full case load and a very busy trial schedule.

The reason attorneys must be compensated by defendants at the attorneys' market rates is that "[a]ny other rule would relegate civil rights enforcement (and the law that results) to those lawyers with below-market billing rates. The rates for those lawyers are usually below market for a reason." *Casey*, 12 F.3d at 805.

Enforcement of the Iowa Civil Rights Act and Title VII depends almost entirely upon the private bar and its willingness to work without payment, most often for several years, prior to being paid. Attorneys do so in reliance on the ICRA's and Title VII's promise that, in the end, they will be fully compensated for their work. That promise must be kept.

***5. The Customary Fee.***

Plaintiff's Counsel charge the following hourly rates for their services in civil rights or other employment cases: Roxanne Conlin, $1,400; Devin Kelly, $450.00; Tyler Adams, $350.00; and Michael Taylor, $250.00. Occasionally, Plaintiff's Counsel are requested to provide services at an hourly rate, such as negotiating severance agreements, writing pre-litigation letters to clients' current or former employers, and negotiating settlements on an hourly basis. These are the rates Plaintiff's Counsel charges for those hourly services, if not higher. Simply because of time constraints, Plaintiff's counsel turn away clients every week who are ready, willing, and able to pay these rates.

The rate a lawyer actually charges her clients is presumptively the correct hourly rate. *See generally Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir. 1993). Those "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court." *Id.* at 1150. While an attorney's customary rate is not necessarily controlling, the rate is evidence of what the reasonable rate should be. *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002).

> There is no better indication of what the market will bear than what the lawyer in fact charges for his services and what his clients pay. In an efficient market, a "reasonable" rate set by the court should mirror the attorney's actual rate because no attorney will charge less than that rate if he can get it and no client will pay more.

*Griffin v. Washington Convention Ctr.*, 172 F. Supp. 2d 193, 197 (D.D.C. 2001).

When Plaintiff's lawyers advise or represent clients on an hourly basis, their clients pay the exact rates requested here. Plaintiff's counsel will submit affidavits from attorneys who are familiar with their work and who attest to the appropriateness of the requested rates.

***6. Whether the Fee is Fixed or Contingent.***

The fact that this case was accepted on a contingency fee basis is also important. Unlike Defendants' counsel who has been paid by the hour regardless of the outcome of the case, Plaintiff's counsel represented their client with no guarantee that they would ever be compensated for their efforts. In addition, unlike Defendants' counsel, Plaintiff's counsel have never been paid one dime for their substantial work during the four-plus years of working this case.

Plaintiff's counsel's firms is among the few firms in the state that accept employment litigation on a completely contingent basis. If they lost this case, they would have been paid nothing at all for their work.

The Tenth Circuit has commented on the profound difference in the economic model of plaintiffs' firms and defense firms:

> Attorneys in defendants' civil rights cases are typically paid regardless of their success in a case and receive payment on a shorter billing cycle. Moreover, defendants' attorneys are sometimes guaranteed a certain amount of work from insurance pools. As the district court pointed out, "Defendants' attempt to impose the insurance pool rate on attorneys who perform plaintiff's civil rights work ignores these benefits—benefits which attorneys who perform plaintiff's civil rights work do not enjoy.

*Malloy v. Monahan*, 73 F.3d 1012, 1018-19 (10th Cir. 1996).

***7. Time Limits.***

This factor does not weigh in favor of or against Plaintiff's counsel's requested fee.

***8. The Amount Involved and the Results Obtained.***

"The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. State of Mo.*, 127 F.3d 709, 716 (8th Cir. 1997) (en banc). "If the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he did not win." *Id.*

Plaintiff won his case and the verdict was substantial, yet reasonable. In addition to money, it is also important to appropriately compensate employees' attorneys for their "public interest achievement." *Lynch v. City of Des Moines*, 464 N.W.2d 236, 239 (Iowa 1990). The Court should consider "not only the significance of the success obtained to [Robert Bender] personally, but also the degree to which [his] core claim[s] served to vindicate the public interest." *Lee III*, 874 N.W.2d at 649. Subjecting employers to public trials and holding them accountable for the harm they cause or fail to prevent, helps deter and prevent future acts of unlawful discrimination like the type Plaintiff endured. This benefits the entire public and makes everyone's workplace safer and fairer.

"The reason a successful civil rights litigant is entitled to attorney fees 'is to ensure that private citizens can afford to pursue the legal actions necessary to advance the public interest vindicated by the policies of civil rights acts.'" *Lynch*, 464 N.W.2d at 239 (quoting *Ayala v. Center Line, Inc.*, 415 N.W.2d 603, 605 (Iowa 1987)). The vindication of important legislative policies in the vital area of civil rights should not depend upon the financial resources of those least able to afford the cost of their enforcement. *Rivera*, 477 U.S. at 576-77; *see also id.* at 578 ("'The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives

surrounding the hiring of competent counsel'") (quoting *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982)).

In the exercise of sound billing judgment and to avoid the possibility of duplication, Plaintiff's attorneys have already voluntarily eliminated time from the account statements. Plaintiff is entitled to the full lodestar as requested for each of his lawyers.

***9. The Experience, Reputation and Ability of the Attorneys.***

Plaintiff's attorney Roxanne Conlin is widely acknowledged as the grande dame of Iowa attorneys, particularly when it comes to civil rights and constitutional matters. She tried the very first case ever under the Iowa Civil Rights Act. *See Iron Workers Local No. 67 v. Hart*, 191 N.W.2d 758 (Iowa 1971). It is unlikely that any attorney has tried more cases under that statute. In addition, those she has counseled over her many years of experience have become some of Iowa's most respected civil rights lawyers, including Paige Fiedler, Brooke Timmer, Tom and Jim Duff, and Nate Borland. Many very successful defense attorneys across this state have also gotten their start under the tutelage of Ms. Conlin.

Ms. Conlin has been the United States Attorney for the Southern District of Iowa and an Iowa Assistant Attorney General. She was the first female president of the 56,000-member American Association for Justice. She is one of 100 plaintiff's lawyers in the Inner Circle of Advocates.

Her associates, Devin Kelly, Tyler Adams, and Michael Taylor all served as law clerks for Ms. Conlin during their days at Drake Law School before joining her firm as associate attorneys.

Attorney Devin Kelly has experience representing both plaintiffs and defendants in civil litigation and served as associate in-house counsel and corporate representative for CRST The Transportation Solution, Inc. one of the largest privately held transportation and logistics

companies in the United States. At the time, the legal department for the entire company consistent of two attorneys-and he was one of them. He routinely serves as local counsel in the state of Iowa for out-of-state firms who have cases in Iowa, has on several occasions provided *pro bono* services to organizations as amicus curiae counsel in major state and federal cases, and was recently named one of the Best LGBTQ "40 Under 40" attorneys in the nation by the National LGBT Bar Association.

Lawyers who handle employment matters routinely can often fulfill their duties in a shorter length of time than lawyers without comparable experience, thus justifying a higher hourly rate. *See Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995).

***10. The "Undesirability" of the Case.***

Society considers employment litigation undesirable. Even the legal profession and the courts consider employment litigation undesirable. It is most frequently unsuccessful. The vast majority of employment cases result in defense verdicts. *See* Kevin M. Clermont & Stewart J. Schwab, *Employment Discrimination Plaintiffs in Federal Court: From Bad to Worse?*, 3 Harv. L. & Pol'y Rev. 103, 113, 127-29 (2009). A plaintiff's verdict is far more likely to be reversed on appeal than a defense verdict. *Id.* at 111-12. Such statistics scare away most law firms from handling employment litigation on behalf of plaintiffs.

Even when the plaintiff wins an employment case, it is common for fees to be reduced for any perceived lack of success or time spent on unsuccessful claims. *See, e.g., Smith v. Iowa State Univ of Sci. & Tech.*, 885 N.W.2d 620, 624-26 (Iowa 2016) (per curiam). The resulting loss of financial incentives discourages all but the most tenacious attorneys from taking on the risks of civil rights causes.

Even among employment discrimination cases, this one had particularly "undesirable" factors which would have caused many firms to refuse to accept the case. Robert Bender worked for a small public school entity in rural Southern Iowa. He was the only black teacher at Evans Middle School. He worked with children with special needs and who had varying degrees of behavioral challenges. He suffered no economic damages. The type of harassment he was subjected to was student-on-teacher and the law on such a claim is still developing. He understood that the compensation of his jury would likely be substantially all non-minority. In addition, many attorneys lack the skills and experience to assist a person with severe emotional distress through the litigation process.

***11. The Nature and Length of the Relationship with the Client.***

Among the contextual considerations recognized is "the nature and length of the professional relationship with the client." *Johnson*, 488 F.2d at 719. This factor focuses largely on whether a prior relationship existed between the client and the attorney. If there was no prior relationship, this factor generally carries little weight. *See Vant Hul v. City of Dell Rapids*, 465 F. Supp. 1231, 1233 (D.S.D. 1979).

Here, the attorney-client relationship was established around February or March 2022. Representation has encompassed the administrative civil rights process, filing Plaintiff's lawsuit, extensive discovery and litigation practice with the successful defense of summary judgment. Representation continued through trial and is still ongoing. This representation was a continuous engagement and allowed counsel to accumulate case knowledge needed to litigate effectively. The relationship counsel garnered with Plaintiff was a positive professional relationship, although it was limited in scope to this matter and no other professional relationship existed. Counsel charged Plaintiff their standard rates, which did not reflect any adjustments based on an

ongoing relationship

Even with no prior relationship, the Court may consider the regular and frequent contact and client satisfaction as weighing in favor of the factor, albeit not heavily. See *Clark v. Gen. Motors, LLC*, 161 F. Supp. 3d 752, 763-764 (W.D. Mo. 2015). Despite no prior relationship between Plaintiff and counsel, the relationship developed in the four-plus years of litigation was positive. Frequent contact was needed to complete the above-mentioned litigation steps and Plaintiff expressed his satisfaction with his representation even prior to a verdict being awarded in this case.

The long-standing engagement promoted efficiency, and built a positive professional attorney-client relationship from the time this case began, through the verdict and post-trial. Considering this history, the nature and length of counsel's relationship with Plaintiff supports the reasonableness of the hours expended and the rates requested.

***12. Awards in Similar Cases.***

"The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719. Here, awards in similar cases include: *Kline v. City of Kan. City, Mo. Fire Dep't.*, 245 F.3d 707, 708-710 (8th Cir. 2001) (upholding an award of approximately $277,900 in fees and $19,400 in costs for a case in which five women sued for gender discrimination, race discrimination, and retaliation but the sole judgment was "an award of approximately $47,100 in compensatory damages and a promotion" for one plaintiff, while the other four plaintiffs' claims did not prevail.); *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (upholding an award of $64,432 in attorney's fees and $1,028.15 in costs for a hostile work environment case in which the Plaintiff was awarded $1 in nominal compensatory damages and $250,000 in punitive damages. The Court

also approved the $350 hourly rate of Plaintiff's counsel.); *Fuller v. Fiber Glass Sys.*, L.P., 618 F.3d 858, 868-869 (8th Cir. 2010) (upholding an award of $63,930.94 in a case in which a female, African American Plaintiff received a jury verdict of $65,000 on her harassment claim); *Dindinger v. Allsteel, Inc.*, No. 3:11-cv-00126-SMR-CFB, 2016 WL 7426580, at *26 (S.D. Iowa Jan. 4, 2016) (awarding a total of $285,123.17 in attorney fees and $40,689.54 in costs for an unequal pay case based on sex in which two Plaintiffs obtained a jury verdict of $204,000); *Baker v. Morrell*, 263 F. Supp. 2d 1161, 1209 (N.D. Iowa 2003) (awarding $163,198.91 in attorney fees and $11,728.23 in costs in a case in which the jury found Defendants liable for sexual harassment and retaliation and Plaintiff was subsequently awarded front pay of $38,921.35).

**DEFENDANTS ARE REQUIRED TO PAY THE ATTORNEY FEES PLAINTIFF INCURS IN ORDER TO RECOVER HIS FEES**

A successful civil rights plaintiff is entitled to "full relief," including the attorney fees and expenses incurred in preparing and pursuing the fee application. *Lynch*, 464 N.W.2d at 240; *Edson v. Chambers*, 519 N.W.2d 832, 835 (Iowa Ct. App. 1994).

. "It would be inconsistent with the purposes of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee." *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978).

Similarly, in *Bond v. Stanton*, the Seventh Circuit noted that fees to recover fees are themselves recoverable. *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980). The *Bond* court also stated that "unless the efforts of successful plaintiffs to obtain fees are includable in a fee award, the award will be subject to potential dilution from the necessary engagement in extensive and uncompensated litigation to defend it, thus undermining the incentive system established in the Act." *Id.* at 1236.

## DEFENDANTS ARE REQUIRED TO PAY THE FULL AMOUNT OF PLAINTIFF'S EXPENSES

The Court should award not only taxable court costs, but also all other reasonable litigation expenses. *Lynch*, 464 N.W.2d at 240; *Edson*, 519 N.W.2d at 834. Out-of-pocket expenses are recoverable "beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002). Plaintiff is entitled to recover "those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996); *see also McGrane v. Saks Inc.*, No. C 97-221, 2001 WL 1545480, at *3 (N.D. Iowa Sept. 27, 2001), aff'd, 36 F. App'x 568 (8th Cir. 2002).

Recoverable expenses include items as scanning, photocopying, printing, computerized legal research, long-distance calls, mileage, postage, meals, parking, travel, and other litigation expenses not recoverable as part of "costs." *Vetter v. State*, No. 16-0208, 2017 WL 2181191, at *15 (Iowa Ct. App. May 17, 2017); *Hernandez v. Bridgestone Am. Tire Ops., L.L.C.*, 831 F.3d 940, 950 (8th Cir. 2016); *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008).

## REQUEST FOR POST-JUDGMENT INTEREST

Plaintiff requests the post-judgment interest on the fee and expense award from the date of entry under both Iowa Code Section 535.3 and/or 28 U.S.C. § 1961 until paid. Post-judgment interest is mandatory on money judgments in civil cases, including fee awards.

## CONCLUSION

It generally requires fewer hours of work to lose a case than to win a case. Winning often requires an enormous investment. Plaintiff's counsel made that investment of time, money, and energy. The law entitles them to a full recovery for all the hours they worked.

The Iowa Supreme Court has recognized the "onerous burden" faced by employees to prove discrimination. *Ayala v. Center Line, Inc.*, 415 N.W.2d 603, 605 (Iowa 1987). It has indicated its appreciation for the importance of attorney fee awards in the design of the overall legislative scheme to attack discrimination in the workplace and "to advance the public interest vindicated by the policies of civil rights acts." *Id.* (citing *Piggie Park*, 390 U.S. at 401-02); *see also Hasan v. Contra Costa County*, 45 Fed. Appx. 795, 2002 WL 31007398 at *1 (9th Cir.) (finding it crucial to the effectiveness of state civil rights act that plaintiffs and their attorneys had confidence that fee-shifting statutes would be enforced.

> "At issue here is much more than the simple question of how much [plaintiff's] attorneys should receive as attorney fees. At issue is ... continued full and vigorous commitment to this Nation's lofty, but as yet unfulfilled, agenda to make the promises of this land available to all citizens, without regard to race or sex or other impermissible characteristic."

*West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 102 (1991) (Marshall, J., dissenting) (quoting *Hidle v. Geneva County Bd. of Educ.*, 681 F. Supp. 752, 758 (M.D. Ala. 1988) (alterations in original)).

Respectfully Submitted,

/s/ *Roxanne Conlin*

ROXANNE CONLIN AT0001642
DEVIN C. KELLY AT0011691
ROXANNE CONLIN & ASSOCIATES, P.C.
3721 SW 61st Street, Suite C
Des Moines, IA 50321
Phone: (515) 283-1111; Fax: (515) 282-0477
Email: roxanne@roxanneconlinlaw.com
dkelly@roxanneconlinlaw.com
cc: dpalmer@roxanneconlinlaw.com
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on October 14, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

_*/s/ Deb Palmer*___________________